152 F.3d 304
 41 Fed.R.Serv.3d 515
 Lee N. KOEHLER, Plaintiff-Appellant,
v.
A. David DODWELL, Defendant-Appellee,
and
Susan J. Mitchell, Party in Interest,
The Reefs; Jenkins and Gibson, Limited; Windward
Properties, Limited; The Reefs Beach Club,
Limited, Garnishees.
 No. 97-2652.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 2, 1998.
Decided Aug. 4, 1998.
 
 ARGUED: Brian Grayson West, Towson, Maryland, for Appellant. Thomas Carroll Beach, III, Whiteford, Taylor & Preston, L.L.P., Baltimore, Maryland, for Appellee. ON BRIEF: Paul F. Newhouse, Towson, Maryland, for Appellant. Michael A. Stover, Whiteford, Taylor & Preston, L.L.P., Baltimore, Maryland, for Appellee.
 Before WILKINS and LUTTIG, Circuit Judges, and FABER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 Reversed by published opinion. Judge WILKINS wrote the opinion, in which Judge LUTTIG and Judge FABER joined.
 WILKINS, Circuit Judge:
 
 
 1
 Lee N. Koehler appeals a decision of the district court vacating a default judgment against A. David Dodwell on the basis that the judgment was void for lack of personal and subject-matter jurisdiction. See Fed.R.Civ.P. 60(b)(4). Koehler argues that the judgment was not void because Dodwell was served in accordance with the terms of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, done November 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 [hereinafter the Hague Service Convention], and that the court had federal diversity jurisdiction over the suit, see 28 U.S.C.A. § 1332 (West 1993). We reverse.
 
 I.
 
 2
 Koehler, a Maryland resident, and Dodwell, a Bermuda resident, are each 50 percent shareholders in Windward Properties, Ltd. ("WPL") a Nevis, British West Indies corporation engaged in resort hotel operations. This suit arose from budget overruns that WPL incurred in renovating a resort it had acquired. The complaint, which alleged federal diversity jurisdiction, stated two causes of action. In a shareholder's derivative claim, Koehler alleged that Dodwell not only caused the cost overruns by failing to use his best efforts to complete the project within budget, but also concealed the overruns, thereby preventing Koehler from restructuring the debt WPL incurred as a result of the project. Koehler also advanced a claim for negligent misrepresentation, claiming that Dodwell, by falsely representing that he would pledge his stock in another corporation to the bank financing the renovations in order to secure WPL's otherwise precarious financial situation, induced Koehler to pledge his own stock in that company. Koehler sought, inter alia, $1,561,294 in damages for the derivative claim and $2,096,343 in damages for the negligent misrepresentation claim, in addition to pre- and post-judgment interest.
 
 
 3
 Koehler's attorney forwarded the summons and complaint to a Bermudian process server, who in turn personally served them upon Dodwell. When Dodwell did not answer or otherwise make an appearance, Koehler applied for a default judgment in the amount of the damages sought in the negligent misrepresentation claim--$2,096,343. The district court subsequently entered a default judgment for Koehler in that amount as well as post-judgment interest and costs. Over the next four years, Koehler initiated garnishment proceedings against various entities in an effort to collect on the default judgment. After that period, Dodwell moved to vacate the judgment. See Fed.R.Civ.P. 60(b)(4).[1] The district court found that it had lacked personal jurisdiction over Dodwell because service was ineffective and Dodwell did not waive that defect. The court also concluded that it lacked diversity jurisdiction over the suit because (1) WPL was necessary and indispensable to the prosecution of the shareholder's derivative claim, see Fed.R.Civ.P. 19; (2) WPL's citizenship was therefore relevant in determining whether the parties were diverse; and (3) WPL's presence in the action would have destroyed diversity. The court refused Koehler's request to drop the derivative claim to preserve the validity of the default judgment, finding that the judgment did not distinguish between the derivative and misrepresentation causes of action.
 
 
 4
 Finally, having determined that the default judgment was void, the district court addressed the question of whether it should dismiss the negligent misrepresentation claim in addition to the derivative claim. The district court concluded that WPL was a necessary and indispensable party to the negligent misrepresentation claim. And, because WPL could not be joined without destroying diversity, the district court ruled that the negligent misrepresentation claim could not go forward. Accordingly, the court vacated the judgment and dismissed Koehler's complaint for lack of diversity jurisdiction.
 
 II.
 
 5
 Koehler first argues that the default judgment was not void for lack of personal jurisdiction because the service upon Dodwell complied with the terms of the Hague Service Convention as ratified by the United Kingdom on Bermuda's behalf. See Fed.R.Civ.P. 4(f)(1) (allowing service on an individual in a foreign country "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the [Hague Service Convention]"). We agree.
 
 
 6
 Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant. See Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir.1984). Moreover, any judgment entered against a defendant over whom the court does not have personal jurisdiction is void. See id. Whether the district court correctly determined that it lacked personal jurisdiction is a question of law subject to de novo review. See Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1198 (4th Cir.1993). The parties agree that here the service was effective only if it was made in accordance with the terms of the Hague Service Convention.
 
 
 7
 The purpose of the Hague Service Convention is to create a method for service of judicial and extrajudicial documents to addressees in different countries. See Hague Service Convention, 20 U.S.T. at 362, 658 U.N.T.S. at 165. To this end, Article 2 of the Convention requires the designation of a "Central Authority" of each signatory state through which requests for service of process may be routed; Articles 3 through 6 provide the necessary procedures; and Article 9 allows a state to use consular or--in exceptional circumstances--diplomatic channels to forward the judicial documents to the designated authorities. Id. arts. 2-6, 9, 20 U.S.T. at 362-63, 658 U.N.T.S. at 165, 167, 169.
 
 
 8
 In crafting the terms of the Hague Service Convention, however, member states also determined that states should be free to consent to additional methods of service within their own borders, consistent with their own laws; consequently, Articles 8 and 10 provide for alternative methods of service and allow ratifying states to decide whether they will object to the methods described. See id. arts. 8, 10, 20 U.S.T. at 363, 658 U.N.T.S. at 169, 171; Vazquez v. Sund Emba AB, 152 A.D.2d 389, 548 N.Y.S.2d 728, 730 (N.Y.App.Div.1989); see also Hague Service Convention art. 21, 20 U.S.T. at 365-66, 658 U.N.T.S. at 177 (requiring each contracting state to inform the Ministry of Foreign Affairs of the Netherlands of opposition to the service methods described in Articles 8 and 10). Of particular relevance here is Article 10(c), which allows "any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." Hague Service Convention art. 10(c), 20 U.S.T. at 363, 658 U.N.T.S. at 171. In ratifying the Hague Service Convention for Bermuda, the United Kingdom declared that "[w]ith reference to the provisions of paragraph[ ] ... (c) of Article 10 of the Convention, documents sent for service through official channels will be accepted in [inter alia, Bermuda] by the designated authority and only from judicial, consular or diplomatic officers of other Contracting States." Declarations of the United Kingdom 3(d), reprinted following Fed.R.Civ.P. 4 (emphasis added).
 
 
 9
 Dodwell does not dispute that Koehler's attorney is a "person interested in [this] judicial proceeding" or that the process server whom Koehler hired was competent to effect service in Bermuda. Dodwell contends, however, that the service upon him did not comply with the declaration of the United Kingdom regarding Article 10. We disagree. The declaration by its own terms applies only to "documents sent for service through official channels"; however, Koehler forewent "official channels" by forwarding the papers directly from his attorney to a private process server in Bermuda, who in turn served them upon Dodwell.[2] See Tax Lease Underwriters, Inc. v. Blackwall Green, Ltd., 106 F.R.D. 595, 596 (E.D.Mo.1985) (holding that "service through official channels" in the context of the declaration in question applies only to documents from embassy or consulate officials); Balcom v. Hiller, 46 Cal.App.4th 1758, 54 Cal.Rptr.2d 536, 540 (1996) (same); White v. Ratcliffe, 285 Ill.App.3d 758, 221 Ill.Dec. 113, 119-20, 674 N.E.2d 906, 912-13 (1996) (same).
 
 
 10
 Dodwell also argues that even if the United Kingdom did not reject Article 10(c) on Bermuda's behalf, that provision nevertheless does not permit service by all persons competent to effect service under Bermuda law, but rather allows service only by government officials. Specifically, Dodwell asserts that "competent persons of the State of destination" in the context of "judicial officers, officials or other competent persons of the State of destination," refers only to competent persons who are employed by the destination State. That is clearly a tortured reading, however. Furthermore, such a restrictive interpretation simply does not fit within the context of the liberal service options provided in the treaty, which include service by mail. See Hague Service Convention art. 10(a), 20 U.S.T. at 363, 658 U.N.T.S. at 169. We therefore conclude that Koehler's service was effective under the Hague Service Convention. Consequently, the district court had personal jurisdiction over Dodwell.[3]
 
 III.
 
 11
 The district court also concluded that it lacked diversity jurisdiction over the suit because WPL was a necessary and indispensable party to the derivative claim, see Fed.R.Civ.P. 19, but could not be joined because such joinder would destroy diversity. Koehler challenges this ruling, contending that even if WPL's presence in the shareholder derivative cause of action would have destroyed diversity,[4] the district court abused its discretion in refusing to drop that claim in order to preserve the validity of the default judgment. See Fed.R.Civ.P. 15, 21. Again, we agree.
 
 
 12
 A judgment entered by a court that lacks subject-matter jurisdiction is void. See Schwartz v. United States, 976 F.2d 213, 217 (4th Cir.1992). However, a party or claim whose presence deprives the court of jurisdiction may be dropped or severed from the action. See Fed.R.Civ.P. 15, 21. And, motions to do so may be made even after entry of judgment. See Caperton v. Beatrice Pocahontas Coal Co., 585 F.2d 683, 691-92 (4th Cir.1978). We review the denial of Rule 15 or 21 relief for abuse of discretion. See Shafer v. Preston Memorial Hosp. Corp., 107 F.3d 274, 281 (4th Cir.1997) (Rule 15); Weaver v. Marcus, 165 F.2d 862, 864 (4th Cir.1948) (Rule 21).
 
 
 13
 Here, because the misrepresentation claim was between a "citizen[ ] of a State"--Koehler--and a "citizen[ ] or subject[ ] of a foreign state"--Dodwell--and the amount in controversy exceeded $50,000, that claim provided a basis for diversity jurisdiction. 28 U.S.C.A. § 1332(a)(2). We need not decide whether the presence of the shareholder derivative claim destroyed the diversity of the parties to this suit[5] because even if it did, the district court abused its discretion in refusing to sever that claim from the action.
 
 
 14
 The sole basis offered by the district court for denying the request to sever that claim and preserve the validity of the judgment was that "the default judgment did not distinguish between the shareholder derivative claim and the negligent misrepresentation claim."[6] J.A. 151. However, the attachment appended by the district court to the default judgment, which provided an accounting of the damages awarded to Koehler, included only damages attributable to the negligent misrepresentation claim and omitted any damages sought for the derivative claim. Thus, the default judgment clearly did not rely on the existence of Koehler's shareholder derivative claim.
 
 
 15
 Furthermore, the equities of this case strongly favor preserving the validity of the judgment. As the district court recognized, Koehler faced significant statute of limitations problems in the event that he sought to pursue his claims in the Bermuda or Maryland courts. Accordingly, vacating the judgment and dismissing the action would effectively reward Dodwell for sleeping on his rights for four years before challenging the judgment against him. Under the circumstances, we conclude that the district court abused its discretion in denying Koehler's request to sever the derivative claim from the suit.[7] Cf. Wall v. Chesapeake & Ohio Ry. Co., 339 F.2d 434, 434-35 (4th Cir.1964) (per curiam) (reversing the denial by the district court of Rule 15 relief when the record reflected no prejudice or unfairness that would have been caused to the defendant had relief been granted); Weaver, 165 F.2d at 864-66 (reversing the denial by the district court of Rule 21 relief when that denial was based on a misconception of law).
 
 IV.
 
 16
 In sum, we conclude that the default judgment was not void for lack of personal or subject-matter jurisdiction. Accordingly, we reverse the vacatur of the judgment.
 
 
 17
 REVERSED.
 
 
 
 [1]
 Rule 60(b) provides in pertinent part, "On motion and upon such terms as are just, the court may relieve a party ... from a final judgment [if] ... (4) the judgment is void." Fed.R.Civ.P. 60(b)
 
 
 [2]
 Indeed, Dodwell recognizes that under his interpretation, the declaration would amount to a complete rejection of Article 10(c)
 
 
 [3]
 Because we conclude that Dodwell was served in accordance with Article 10(c) of the Convention, we do not address Koehler's arguments that service was proper under Article 19, that Dodwell waived any service defects, and that Dodwell failed to provide proper notice of his intention to raise an issue of foreign law
 
 
 [4]
 We note that to the extent that WPL's citizenship is relevant to the question of whether the judgment is void for lack of diversity jurisdiction, it is WPL's status as the sole real party in interest in the derivative claim--not its status as an indispensable party to that claim--that makes it relevant. See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) (explaining that in determining whether diversity exists, courts look to the citizenship of the real parties in interest); Ross v. Bernhard, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) (observing that the corporation, not the shareholder, is the real party in interest in a shareholder's derivative suit); see also authorities cited in note 7, infra (explaining that failure to join an indispensable party does not deprive a court of subject-matter jurisdiction)
 
 
 [5]
 Accordingly, we do not decide whether WPL should be considered a plaintiff or a defendant for purposes of determining diversity. See Smith v. Sperling, 354 U.S. 91, 95-97, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957) (holding that for the purpose of determining diversity in a shareholder's derivative action, the corporation will be aligned with the defendant when the corporation is antagonistic to the plaintiff's claim)
 
 
 [6]
 Following the entry of the default judgment, the presiding district court judge died, and the case was reassigned to another district court judge, who ruled on the Rule 60(b)(4) motion
 
 
 [7]
 We note that the issue of whether WPL was indispensable to the resolution of the misrepresentation claim is immaterial to the validity of the default judgment. Federal Rule of Civil Procedure 19(a) provides that persons who claim an interest relating to the matter litigated and persons whose presence in a suit is necessary to accord complete relief between those who are already parties shall be joined in the action if they are subject to service of process and their joinder in the litigation will not deprive the court of subject-matter jurisdiction. See Fed.R.Civ.P. 19(a). Rule 19(b) then explains that if such a person "cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b) (emphasis added). As the emphasized language of Rule 19(b) indicates, however, the requirement that a case shall not proceed absent joinder of all indispensable persons is not a jurisdictional prerequisite, but rather an equitable rule "both in its origin and nature." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1611 (2d ed.1986). Indeed, the Advisory Committee Notes to the 1966 amendment of Rule 19 state that the rule was amended in part to make clear that "[e]ven if the court is mistaken in its decision to proceed in the absence of an interested person, it does not by that token deprive itself of the power to adjudicate as between the parties already before it through proper service of process." Fed.R.Civ.P. 19 advisory committee's note; see United States v. O'Neil, 709 F.2d 361, 371 (5th Cir.1983) (explaining that the issue of whether an indispensable person was not joined as a party is not jurisdictional and therefore a judgment is not void because of the failure to join the indispensable person); Rippey v. Denver United States Nat'l Bank, 42 F.R.D. 316, 318-19 (D.Colo.1967) (observing that "[t]he framers of the new Rule 19 ... specifically emphasize that the Rule calls for determining whether the court ought to proceed without the absent party, not whether it has jurisdiction to proceed against those who are present"); 4 James Wm. Moore et al., Moore's Federal Practice § 19.02[c] (3d ed.1998) (noting that because failure to join an indispensable party is not a jurisdictional defect, a judgment in the absence of joinder of a person who should have been found to be indispensable is not subject to collateral attack); 7 Wright et al., Federal Practice and Procedure § 1611 (stating that a judgment is not subject to collateral attack based on the failure by the court to join an indispensable party because failure to join an indispensable party does not deprive the court of subject-matter jurisdiction). But cf. Stroud v. Benson, 254 F.2d 448, 453 (4th Cir.1958) (holding, prior to the 1966 amendment of Rule 19, that failure to join an indispensable party deprived the district court of subject-matter jurisdiction over the suit). Accordingly, had the district court severed the derivative claim from the action, the validity of the default judgment would have been preserved