Debra Z. RANDOLPH, Plaintiff,

v.

Martin HENDRY, Defendant.

Civil Action No. 6:99–0253.

United States District Court,
S.D. West Virginia,
Parkersburg Division.

May 11, 1999.

Thomas Munchmeyer, William O. Merriman, Jr., Cosenza, Underwood & Merriman, Parkersburg, WV, for plaintiff.

J. Rudy Martin, Cortland C. Potbrese, Jackson & Kelly, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

Pending before the Court is the motion of the defendant to dismiss this case pursuant to Rule 12(b)(1), (2), (4), and (5) of the Federal Rules of Civil Procedure. The memorandum accompanying the motion addresses only the Rule 12(b)(5) justification—dismissal based upon insufficiency of service of process. The Court's clerk, with notice to the defendant, contacted the plaintiff's counsel to remind him of his obligation to respond to the motion, yet the plaintiff failed to respond. Rather, plaintiff's counsel mailed to the Court many days later an unfiled motion requesting additional time to respond.[1] Nevertheless, with respect to the Rule 12(b)(1), (2), and (4) bases for dismissal, the motion is **DENIED** without prejudice pursuant to Local Rule 7.1(a), which requires Rule 12(b) motions to be supported by memoranda.[2] With respect to the Rule 12(b)(5) justification, the motion is **DENIED AS PREMATURE** without prejudice.

### I.

The plaintiff Debra Randolph filed this action in the Circuit Court of Wood County, West Virginia, on January 20, 1999. In her complaint, Randolph alleged that the defendant, Canadian resident Martin Hendry, had negligently driven his vehicle through a red light on January 24, 1997 in Wood County, causing his vehicle to strike the vehicle in which Randolph was traveling. Randolph further alleged that she suffered "great pain of body and mind," among other injuries, as a direct and proximate result of the collision.

The relevant facts are not in dispute. Because the defendant is a not a resident of West Virginia, and this action is one concerning the operator of a motor vehicle involved in an accident, the plaintiff sought to avail herself of the service-of-process procedures outlined in West Virginia Code section 56–3–31(e). That subsection provides:

> Service of process upon a nonresident shall be made by leaving the original and two copies of both the summons and complaint, together with the bond certificate of the clerk, and the fee ... with the secretary of state ... and said

---

1. That motion, made nearly a month after the time to respond had passed, is denied in a separate Memorandum Opinion and Order.

2. Despite indications to the contrary, it is doubtful that the removing defendant truly intended to argue lack of subject matter jurisdiction as a basis for dismissal after alleging the existence of the same in its Notice of Removal.

service shall be sufficient upon the non-resident defendant ... Provided, That notice of service and a copy of the summons and complaint shall be sent by registered or certified mail, return receipt requested, by the secretary of state to the nonresident defendant. The return receipt signed by the defendant or his or her duly authorized agent shall be attached to the original summons and complaint and filed in the office of the clerk of the court from which process is issued. In the event the registered or certified mail sent by the secretary of state is refused or unclaimed by the addressee or if the addressee has moved without any forwarding address, the registered or certified mail returned to the secretary of state, or to his or her office, showing thereon the stamp of the post-office department that delivery has been refused or not claimed or that the addressee has moved without any forwarding address, shall be appended to the original summons and complaint and filed in the clerk's office of the court from which process issued.

W. VA. CODE § 56–3–31(e) (Supp.1998).

It appears that the plaintiff indeed caused the Secretary of State to attempt to effect service upon the defendant by use of registered mail, return receipt requested. However, it also appears that the registered mail sent by the Secretary of State was unclaimed by the defendant, and was thus returned to the Secretary of State and thereafter filed in the clerk's office.

As contemplated by the West Virginia Code, the plaintiff next attempted to effect service utilizing the procedures outlined in section 56–3–31(g). That subsection provides:

> In the event service of process upon a nonresident defendant cannot be effected through the secretary of state as

provided by this section, service may be made upon the defendant's insurance company. The plaintiff must file with the clerk of the circuit court an affidavit alleging that the defendant is not a resident of this state; that process directed to the secretary of state was sent by registered or certified mail, return receipt requested; that the registered or certified mail was returned to the office of the secretary of state showing the stamp of the post-office department that delivery was refused or that the notice was unclaimed or that the defendant addressee moved without any forwarding address; and that the secretary of state has complied with the provisions of subsection (e) herein. Upon receipt of process the insurance company may, within thirty days, file an answer or other pleading and take any action allowed by law in the name of the defendant.

*Id.* § 56–3–31(g).

The plaintiff served the summons and complaint upon the defendant's insurance company's claims adjuster, Fred Rusmisell, by certified mail at his Clarksburg, West Virginia address on March 11, 1999. She subsequently filed the return receipt. A review of the Circuit Court of Wood County docket sheet in this case does not reveal that the plaintiff filed an accompanying affidavit. (*See* Notice of Removal, at Ex. 2.)

## II.

■ It is well-established that state law governs whether service of process is properly effected prior to removal. *See Eccles v. National Semiconductor Corp.,* 10 F.Supp.2d 514, 519 (D.Md.1998); 4A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1082 (2d ed. 1987 & Supp.1999). The defendant argues that the acts taken by the plaintiff to effect service were insufficient under West Virginia law.[3] The defendant also

---

3. The defendant suggests that Federal law applies to the question of whether service was effective prior to removal "because the case is currently in federal court." While that reasoning is accurate with respect to process served following removal pursuant to 28 U.S.C. § 1448, it is inaccurate with respect to service attempted prior to removal.

argues that the acts taken by the plaintiff to effect service were insufficient because they did not conform to the requirements of the Hague Convention on the Service ·Abroad of Judicial and Extrajudicial Documents. Nov. 15, 1965, 20 U.S.T. 361 [hereinafter Hague Convention].

### A.

■ The Hague Convention is a multinational treaty formulated in 1964, approved by representatives of the twenty-three states that were members of the Tenth Session of the Hague Conference of Private International Law, and ratified or accessioned to by at least thirty-six states, including the United States and Canada. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). Self-executing be-· cause it establishes affirmative and judicially enforceable obligations on its own terms without benefit of subsequent implementing legislation, the Hague Convention is considered to be of equal dignity with acts of Congress. *Vorhees v. Fischer & Krecke,* 697 F.2d 574, 575 (4th Cir.1983). The Hague Convention, through the Supremacy Clause, thus preempts conflicting state law. As the United States Supreme Court stated in *Volkswagenwerk,* "[b]y virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." *Volkswagenwerk,* 486 U.S. at 699, 108 S.Ct. 2104.

[3] Article 1 of the Hague Convention provides unambiguously that its terms apply "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."[4] Hague Convention, 20 U.S.T. at 362; *Volkswagenwerk,* 486 U.S. at 700, 108 S.Ct. 2104. The Convention does not specify when there is "occasion to transmit" a complaint "for service abroad."

*Volkswagenwerk,* 486 U.S. at 700, 108 S.Ct. 2104.

■ The Convention allows the law of the applicable forum—here, the laws of the state of West Virginia prior to removal—to describe what steps constitute service of process. Under West Virginia's Nonresident Operators of Motor Vehicles law as applied to this case, service of process is not effective unless the plaintiff has caused a transmission for service abroad. *See* W. VA. CODE § 56–3–31; *Curcuruto v. Cheshire,* 864 F.Supp. 1410, 1411 (S.D.Ga. 1994) (finding that Hague Convention applies to service pursuant to similar Georgia non-resident motorist statute); *Quinn v. Keinicke,* 700 A.2d 147, 154 (Del.Super.Ct.1996) (invalidating service under similar Delaware non-resident motorist statute on identical grounds). That is true, regardless of whether service is ultimately completed through service directly of the individual nonresident defendant or indirectly through service of the insurance company. If service is to made directly upon the defendant, West Virginia Code section 56–3–31(e) requires that the plaintiff cause the Secretary of State to transmit the summons and complaint to the defendant by registered mail. W. VA. CODE § 56–3–31(e). If service is ultimately to be effected by serving the defendant's insurance company, the West Virginia Code still requires that the plaintiff first attempt to serve the defendant directly by registered mail and that the plaintiff obtain a receipt marked "refused" or "unclaimed" or an indication that the defendant moved without any forwarding address. *Id.* § 56–3–31(g).

West Virginia Code section 56–3–31 requires the transmission of documents in order to effect service of process abroad. A plaintiff seeking to avail herself of that section's provisions must therefore comply

---

4. The defendant suggests that "[b]ecause Mr. Hendry is a resident of Canada, service of process on him is governed by· the Hague Convention." The Hague Convention does not apply because the defendant is a resident of a foreign nation, rather it applies whenever there is occasion to transmit a judicial or extrajudicial document for service abroad. Hague Convention. 20 U.S.T. at 362; *Volkswagenwerk,* 486 U.S. at 700, 108 S.Ct. 2104.

with the requirements of the Hague Convention.

## B.

The purpose of the Hague Convention is to articulate and establish an efficient method of effecting service of documents internationally. Hague Convention, 20 U.S.T. at 362; *Koehler v. Dodwell,* 152 F.3d 304, 307 (4th Cir.1998). With that intent, the Hague Convention sets forth several mechanisms for effecting service with the primary one set forth in Articles 2 through 7. *See* Hague Convention, 20 U.S.T. at 362–63. Those Articles require member states to designate a "Central Authority" through which service of process can be effected. *Id.* The "Central Authority" receives documents from a competent authority or judicial officer abroad, serves the documents domestically according to the internal law of the receiving state, and returns a certificate of service. *Id.* Article 9 allows states to use consular channels to forward documents or—if exceptional circumstances warrant—diplomatic channels to forward documents to appropriate authorities of another state for service. *Id.* at 363.

Articles 8, 10 and 11 provide alternatives to the Central Authority method of effecting service. *See id.* at 363–64. These means are provided for in the Hague Convention, but member states may nevertheless opt out of them if they so choose. *Id.* Of relevance here are the options provided for in Article 10. That Article reads as follows:

Provided the State of destination does not object, the present Convention shall not interfere with -

(a) the freedom to send judicial documents, by postal channels, directly to persons abroad.

(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

*Id.* at 363.

It has been suggested that no single provision in the Hague Convention has received as much judicial attention as Article 10(a). Franklin B. Mann, Comment, *Foreign Service of Process by Direct Mail Under the Hague Convention and the Article 10(a) Controversy: Send v. Service,* 21 CUMB. L. REV. 647, 653 (1990/1991). Despite the persistent flow of judicial ink, broad disagreement over its meaning persists. Specifically, courts disagree over the definition of the word "send" in Article 10(a). Some have determined that the word "send" was intended to be used synonymously with "service of process," especially in light of the purpose of the Hague Convention which is to facilitate service abroad. Under that view, service of process by mail is allowable if the defendant's state has levied no objection to the Article. *See Ackermann v. Levine,* 788 F.2d 830 (2d Cir.1986); *Eli Lilly and Co. v. Roussel Corp.,* 23 F.Supp.2d 460 (D.N.J.1998); *EOI Corp. v. Medical Mktg. Ltd.,* 172 F.R.D. 133 (D.N.J.1997); *R. Griggs Group Ltd. v. Filanto S.P.A.,* 920 F.Supp. 1100 (D.Nev.1996); *Patty v. Toyota Motor Corp.,* 777 F.Supp. 956 (N.D.Ga.1991); *Melia v. Les Grands Chais de France,* 135 F.R.D. 28 (D.R.I.1991); *Meyers v. ASICS Corp.,* 711 F.Supp. 1001 (S.D.Cal.1989); *Hammond v. Honda Motor Co.,* 128 F.R.D. 638 (D.S.C.1989); *Cartwright v. Fokker Aircraft U.S.A., Inc.,* 713 F.Supp. 389 (N.D.Ga.1988); *Montgomery, Zukerman, Davis, Inc. v. Diepenbrock,* 698 F.Supp. 1453 (S.D.Ind.1988); *Smith v. Dainichi Kinzoku Kogyo Co.,* 680 F.Supp. 847 (W.D.Tex.1988); *Turick v. Yamaha Motor Corp.* 121 F.R.D. 32 (S.D.N.Y.1988); *Newport Components, Inc. v. NEC Home Electronics, Inc.,* 671 F.Supp. 1525 (C.D.Cal.1987); *Lemme v. Wine of Japan Import, Inc.,* 631 F.Supp. 456 (E.D.N.Y. 1986); *Zisman v. Sieger,* 106 F.R.D. 194

(N.D.Ill.1985); *Weight v. Kawasaki Heavy Indus., Ltd.,* 597 F.Supp. 1082 (E.D.Va. 1984); *Chrysler Corp. v. General Motors Corp.,* 589 F.Supp. 1182 (D.D.C.1984).

Other courts have concluded that, because the word "service" is used elsewhere in parts (b) and (c) of the Article, the word "send" must have a different meaning from "service." Those courts hold that Article 10(a) allows the transmission of documents other than process. *See Bankston v. Toyota Motor Corp.,* 889 F.2d 172 (8th Cir.1989); *Golub v. Isuzu Motors,* 924 F.Supp. 324 (D.Mass.1996); *Gallagher v. Mazda Motor of Am., Inc.,* 781 F.Supp. 1079 (E.D.Pa.1992); *Anbe v. Kikuchi,* 141 F.R.D. 498 (D.Haw.1992); *Wilson v. Honda Motor Co.,* 776 F.Supp. 339 (E.D.Tenn. 1991); *Fleming v. Yamaha Motor Corp.,* 774 F.Supp. 992 (W.D.Va.1991); *Soupart v. Houei Kogyo, Co.,* 770 F.Supp. 282 (W.D.Pa.1991); *Raffa v. Nissan Motor Co., Ltd.,* 141 F.R.D. 45 (E.D.Pa.1991); *Trask v. Service Merchandise Co.,* 135 F.R.D. 17 (D.Mass.1991); *Wasden v. Yamaha Motor Co.,* 131 F.R.D. 206 (M.D.Fla. 1990); *McClenon v. Nissan Motor Corp.,* 726 F.Supp. 822 (N.D.Fla.1989); *Hantover, Inc. v. Omet,* 688 F.Supp. 1377 (W.D.Mo.1988); *Prost v. Honda Motor Co.,* 122 F.R.D. 215 (E.D.Mo.1987); *Cooper v. Makita, U.S.A., Inc.,* 117 F.R.D. 16 (D.Me.1987); *Pochop v. Toyota Motor Co.,* 111 F.R.D. 464 (S.D.Miss.1986); *Mommsen v. Toro Co.,* 108 F.R.D. 444 (S.D.Iowa 1985). The proper interpretation is quite obviously of critical importance here because, as has already been determined, West Virginia's Nonresident Operators of Motor Vehicles law requires an international mailing before service on a foreign defendant may be effected.

While the Fourth Circuit has not yet addressed the matter directly, several district courts within the circuit have—with conflicting results. *See Fleming,* 774 F.Supp. at 995–96; *Hammond,* 128 F.R.D. at 641–42; *Weight,* 597 F.Supp. at 1085–86; *Rich v. KIS California, Inc.,* No. C–87–801–WS, 1988 WL 47605, at *2–4 (M.D.N.C. April 25, 1988). At least two circuit courts have also reached the issue, also with conflicting results. *Compare Bankston,* 889 F.2d at 173–74 (finding that Article 10(a) does not authorize service of process by mail), *with Ackermann,* 788 F.2d at 838–40 (finding that Article 10(a) authorizes service of process by mail).

■ A fundamental tenet of treaty construction is that the words be read in overall context. The purpose of the Hague Convention is to articulate and establish an efficient method of effecting service of documents internationally. The primary method created by the Convention—and the only method that is mandatory on the signatory states—is service through the designated "Central Authority." However, the member states sought also to describe alternative methods of service in Articles 8, 10, and 11. Those methods are optional on the member states.

■ The Hague Convention is intended to provide methods of service, and Article 10(a) clearly describes one such method. Were that not the case—if the contrary interpretation were correct—then the Article 10(a) provisions would be terribly misplaced. It would be a provision that allows for the use of the mails, but would not provide any guidance on the issue of service of documents abroad—the only issue that the Hague Convention was intended to address.[5] To read Article 10(a) as not allowing for service of documents, including service of process, where the recipient state has not objected thereto, would impermissibly isolate Article 10(a) from the overall context of the Convention.

Practical considerations lend further support to the Court's interpretation. Article 10 allows states to opt out of its provisions. Those that interpret Article 10(a) as merely acknowledging that persons involved in litigation can use the mails to correspond, but not for service, would

---

5. Indeed, the Hague Convention's very name—Convention on the Service Abroad of   Judicial and Extrajudicial Documents in Civil or Commercial Matters—suggests as much.

presumably interpret a state's decision to opt out of Article 10(a) as a decision by that state to forbid the use of the mails entirely. To conduct litigation with defendants in those nations, every judicial document would therefore· have to travel through the central authority. There is no justification for that conclusion.

The Court also notes that the State Department—in direct response to the Eighth Circuit's holding in *Bankston*—has interpreted Article 10(a) as authorizing service of process by mail if the recipient country has not objected. .Letter from Alan J. Kreczco, U.S. Dep't of State Deputy Legal Advisor, to Admin. Off. of the U.S. Courts and Nat'l Center for State Courts (March 14, 1991), *reprinted in part in United States Department of State Opinion Regarding the Bankston Case and Service by Mail to Japan under the Hague Service* Convention, 30 I.L.M. 260, 261 (1991). In so doing, the State Department expressly rejected the *Bankston* interpretation. "We therefore believe that the decision of the Court of Appeals in *Bankston* is incorrect to the extent that it suggests that the Hague Convention does not permit as a method of service the sending of a copy of the summons and complaint by registered mail to a defendant in a foreign country." *Id.* While the opinion of the State Department is certainly not dispositive, this Court finds it persuasive, especially because it offers an indication of the intent of the drafters of the Convention that was not available to the Eighth Circuit. *See* RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 326(2) (1986).

Finally, the Fourth Circuit's recent decision in *Vorhees v. Fischer & Krecke* lends support for the Court's interpretation of Article 10(a). *See Vorhees,* 697 F.2d at 307–08. Although the issue in *Vorhees* was the proper reading of Article 10(c), the court stated that a restrictive interpretation of Article 10(c) would simply "not fit within the context of the liberal service options provided in the treaty, which include service by mail." *Id.* (citing Hague Convention Art. 10(a), 20 U.S.T. at 363).

Article 10(a) of the Hague Convention authorizes service of judicial documents, including service of process that originates abroad and reaches recipients in a consenting member state by direct mail. Because Canada does not object to service by postal channels, service of process by mail is authorized in this case. *See* Hague Convention, 28 U.S.C. at 125 (Supp.1998) ("Canada does not object to service by postal channels.").

### C.

The conclusion that Article 10(a) allows foreign service of process by mail does not, however, satisfy the defendant's concerns here. The defendant, without mention of the vast split in authority, surprisingly agrees that the Hague Convention allows service of process by certified or registered mail. The defendant suggests, however, that courts so finding have "also stated that there *must* be evidence by way of return receipt that delivery by registered mail had been made in order for the service to be effective." (Mem. in Supp. of Mot. to Dismiss of Def. Martin Hendry at 4 (citing *Chowaniec v. Heyl Truck Lines,* No. 90–C–07034, 1991 WL 111156, at *2–3 (N.D.Ill. June 17, 1991)); *Meyers v. ASICS Corp.,* 711 F.Supp. 1001, 1007 (C.D.Cal. 1989).) The defendant concludes that because service of process was attempted by registered mail and that the summons was returned marked "unclaimed," service of process was not effected.

■ There is no requirement within the Hague Convention that service of process be effected by use of registered mail and certainly no requirement that a return receipt be obtained. *See* Hague Convention, 20 U.S.T. 361. Rather, the Hague Convention provides the mechanism for service of process and leaves more detailed requirements up to the individual member nations to determine. Thus, whether a return receipt is required is a question wholly determined with reference to the applicable law of the forum seeking to obtain jurisdiction over the defendant and

the overarching requirements of procedural due process. As such, the opinions cited by the defendant in support of the return receipt requirement are not instructive. *Chowaniec*, itself, says as much. *See Chowaniec*, 1991 WL 111156, at *3 ("Chowaniec finds himself in a situation much like that of a plaintiff who attempts service by mail on a resident of the United States. Mail service is a permissible means of service, but a defendant who receives service material by mail is not obligated to return the acknowledgment form; this decision renders service ineffective under Rule 4(c)(2)(C)(ii)." (quotations and citations omitted)).[6] *Meyers* merely applies California law.

## III.

■ West Virginia Code section 56–3–31 diverges from the common law governing service of process. *Evans v. Holt*, 193 W.Va. 578, 457 S.E.2d 515, 521 (1995). It is therefore construed very strictly by West Virginia courts. *Id.*

■ The Circuit Court of Wood County docket sheet in this case does not indicate that the plaintiff filed an accompanying affidavit as required under West Virginia Code section 56–3–31(e). (*See* Notice of Removal, at Ex. 2.) Furthermore, the plaintiff served the summons and complaint upon the defendant's insurance company's claims adjuster, rather than upon the insurance company. The plaintiff's failures are fatal. *See Evans*, 457 S.E.2d at 522–23. This Court therefore finds that service has not been effected.

## IV.

The mere fact that service has not yet been effected does not mandate dismissal. After the filing of their complaints, plaintiffs are granted time within which to locate defendants and to serve them. Pursuant to Rule 4(k) of the West Virginia Rules

of Civil Procedure, the plaintiff must serve the summons and complaint upon the defendant within 120 days after the filing of the complaint. Because the plaintiff filed the complaint on January 20, 1999, West Virginia law would allow her until **May 20, 1999**, to serve the summons and complaint upon the defendant.

The defendant, apparently in possession of "some source of extrajudicial knowledge of this litigation after its filing," *Eccles*, 10 F.Supp.2d at 516, but in any event, with notice of its initiation, removed the case to federal court prior to the expiration of the 120–day period. Now in federal court, the defendant urges the Court to dismiss the case for failure to serve. In his brief, however, the defendant does not provide any authority in support of his suggestion that the Court dismiss this case prior to the running of the 120–day period for service. The Court will deny the defendant's motion at this time.

The defendant, in his brief, did not indicate how he might calculate that deadline now that this action has been removed to this Court. Plaintiff's counsel failed to submit any brief at all.

[10] When no defendant has been served, in an action removed to federal court from state court, Rule 4(m) of the Federal Rules of Civil Procedure requires the plaintiff to serve the summons and complaint upon the defendant within 120 days from filing of the Notice of Removal in the federal court. *Motsinger v. Flynt*, 119 F.R.D. 373, 377 (M.D.N.C.1988); *see also Eccles*, 10 F.Supp.2d at 519; *Alber v. Illinois Dep't of Mental Health & Developmental Disabilities*, 786 F.Supp. 1340, 1376–77 (N.D.Ill.1992) (holding that Federal Rule 4(k) 120–day service deadline begins to run only after filing of Notice of Removal and subsequent favorable ruling

---

6. Notably, the portion of *Chowaniec* that is instructive is the ultimate determination that "it would be improper to dismiss the complaint as to [the defendant] simply because [the plaintiff] failed to properly effect service. We will give [the plaintiff] a 'reasonable op-

portunity to attempt to effect service on the defendant in a manner complying with the Hague Convention.'" *Chowaniec*, 1991 WL 111156, at *3 (*quoting Vorhees v. Fischer & Krecke*, 697 F.2d 574, 575–76 (4th Cir.1983) (citations omitted)).

on plaintiff's application to proceed in forma pauperis); *Bruley v. Lincoln Property Co., N.C., Inc.,* 140 F.R.D. 452, 454–55 (D.Colo.1991); *see generally Ritts v. Dealers Alliance Credit Corp.,* 989 F.Supp. 1475, 1478 (N.D.Ga.1997) (recognizing authority for restarting time for service). Ordinarily, Rule 4(m) would require the plaintiff to effect service within 120 days of the filing of the complaint, but in the context of removal, the federal court does not obtain an interest in the action—and cannot therefore dictate the terms of service—until the Notice of Removal is filed. *Alber,* 786 F.Supp. at 1376. Although neither the Fourth Circuit nor the United States Supreme Court has explicitly adopted this rule, the former has shown some favor for it in at least one unpublished opinion. *See Brazell v. Green,* 67 F.3d 293, 1995 WL 572890, at *1 (4th Cir.1995) (holding that plaintiff after removal should be given time to serve defendant properly).

The Court recognizes that the potential prejudicial impact of the Court's calculations will be borne by future defendants who are not served within the time period set forth under state law and who therefore have state procedural justification for dismissal. Placement of the burden on that rare defendant's shoulders is proper, however, because it is that defendant who makes the decision to remove the case to federal court and restarts the clock. Furthermore, restarting the clock for service upon removal eases a terribly unfair burden that could otherwise befall a plaintiff. That is, if the Court's calculations are not the law, then a plaintiff filing a complaint in a state that allows for service beyond 120 days—a plaintiff to whom state law might give a deadline of 180 days, for example—could find his case quickly removed by the defendant and dismissed by the federal court prior to the passing of the state deadline for violation of federal

procedural requirements that mandate service in federal cases within 120 days. That untenable result would force cautious plaintiffs to abandon their state-created right to delay service beyond 120 days out of fear that federal procedural law might one day be applied retroactively to their case after the defendant's unilateral act of removal.

## V.

The limited power of the federal government has been invoked in this action and the case is now in the hands of the federal court. The unserved state court process has become null and void. *Beecher v. Wallace,* 381 F.2d 372, 373 (9th Cir.1967) (citing and interpreting 28 U.S.C. §§ 1446, 1448); *see Brazell,* 1995 WL 572890, at *1 (vacating dismissal order and remanding to district court with instructions to allow plaintiff to serve defendants in accordance with federal procedural requirements); *Richards v. Harper,* 864 F.2d 85, 87 (9th Cir.1988). Going forward, therefore, the plaintiff may cause the clerk to issue new process in this case in the same manner as in cases originally filed in this Court. 28 U.S.C. § 1448.

The motion to dismiss is **DENIED AS PREMATURE** without prejudice. The plaintiff must effect service of the summons and complaint upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and no later than **Tuesday, July 27, 1999.**[7] All other scheduling dates, including those provided in the Order and Notice entered by the Court on April 6, 1999, are **VACATED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

7. The 120-day time limit provided in Rule 4(m) does not apply to service in a foreign country pursuant to Rule 4(f). Thus, the Court expressly determines that the imposition of the July 27, 1999 deadline provides the plaintiff with a "reasonable opportunity to attempt to effect service on the defendant in a manner complying with the Hague Convention." *Cf. Vorhees v. Fischer & Krecke,* 697 F.2d 574, 575–76 (4th Cir.1983).