**G.G.G. PIZZA, INC., Plaintiff,**

v.

**DOMINO'S PIZZA, INC. and T.S.M. Leasing Corp., Defendants.**

**No. CV 97–4690(DRH).**

United States District Court, E.D. New York.

Aug. 11, 1999.

---

William H. Sweeney, Jr., Hauppauge, NY, for Plaintiff.

Fredric A. Cohen, Mai S. Shiver, Rudnick & Wolfe, Chicago, IL, Edward J. Henderson, Linda M. Baldwin, Haythe & Curley, New York City, for Defendant Domino's Pizza, Inc.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

Pending before the Court is the motion of Defendant Domino's Pizza, Inc. ("DPI") to dismiss the Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), or, alternatively, to dismiss the Complaint for Plaintiff's failure to serve timely the Complaint, pursuant to New York Civil Practice Law and Rules Section 3012(b). For the reasons that follow, the motion is denied without prejudice.

## BACKGROUND

Between July 1988 and March 1990, Plaintiff G.G.G. Pizza, Inc., a New York corporation, entered into five Domino's Pizza, Inc. Standard Franchise Agreements (the "Franchise Agreements") with DPI, a Michigan corporation. (Compl. ¶¶ 3, 5, 8, 11, 14, 17, 20.) Pursuant to the Franchise Agreements—which are identical in all material respects—Plaintiff was granted the right to operate DPI stores in East Northport, Brentwood, East Islip, Smithtown and Commack, New York.[1] (*Id.* ¶¶ 8, 11, 14, 17, 20.)

Under the Franchise Agreement, Plaintiff was required to pay DPI "a royalty fee of five and one-half percent (5–1/2%) of the weekly royalty sales of the Store." (Franchise Agreement ¶ 6.1.) Additionally, the Franchise Agreement granted Plaintiff the right to transfer or assign its rights and obligations under the Franchise Agreement under certain circumstances, provided, *inter alia,* that Plaintiff "[is] not in default under this Agreement or any other

---

**1.** The Franchise Agreements are properly considered by the Court on this motion to dismiss. *See Koppel v. 4987 Corp.,* 167 F.3d 125, 128 (2d Cir.1999) (considering on Rule 12(b)(6) motion facts derived "from the most recent complaints and documents referenced therein"); *Brass v. American Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (court may consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit").

agreement with [DPI] or [DPI's] subsidiaries or affiliates." (*Id.* ¶ 21.4(a).) Finally, the Franchise Agreement gave DPI the right to terminate the Agreement "upon delivery of notice of termination" in the event that Plaintiff "fail[s] to pay when due any amount owed to [DPI], [DPI's] affiliates or subsidiaries, . . . and [Plaintiff] do[es] not correct such failure within fifteen (15) calendar days after written notice is delivered to [Plaintiff]." (*Id.* ¶ 18.2(j).)

According to the Complaint, prior to entering into the Franchise Agreement with respect to the Smithtown store, DPI had represented to Plaintiff that "that store was doing $5,500.00 per week," when it "was actually doing approximately $2,000.00 per week." (Compl.¶¶ 24–25.) As a result of the alleged misrepresentations, in August 1990, Plaintiff ceased making certain royalty payments to DPI. (*Id.* ¶ 32.) In November 1990, Plaintiff met with a DPI representative "to discuss the matter and to work out a plan for the plaintiff to pay the defendant certain monies which the defendant claimed it was due." (*Id.* ¶ 33.) Plaintiff realized it would need to reduce its debt in order to pay to DPI the monies it allegedly owed; Patrick Kelly ("Kelly"), a DPI director acting on behalf of DPI, allegedly offered to purchase Plaintiff's East Northport and Brentwood stores for $180,000 and $110,000, respectively, and further agreed to keep DPI's offer open "while plaintiff made efforts" to get better offers. (*Id.* ¶ 34, 36–38.)

On or about January 10, 1991, Plaintiff entered into an agreement with Jeffrey Goodman for the purchase of the East Northport store for the sum of $265,000. (*Id.* ¶ 39.) In March 1991, (1) DPI approved Goodman's purchase of the East Northport store and (2) Defendant T.S.M. Leasing Corp. ("TSM"), allegedly an "affiliate" of DPI, approved Goodman for financing in the amount of $140,230.29. (*Id.* ¶ 48.) Plaintiff "expressed concern and disappointment" with TSM's financing offer, and "defendants assured plaintiff that

it would review the situation and reevaluate [their] position." (*Id.* ¶ 49.) On or about March 17, 1991—for reasons not apparent from the Complaint—TSM advised plaintiff that it would not finance Goodman's proposed purchase of the East Northport store. (*Id.* ¶ 50.)

At a meeting on April 4, 1991 between Kelly—again acting on behalf of DPI—and Gregory Gustavson ("Gustavson"), Plaintiff's sole shareholder, DPI "reneged" on its offer to purchase the East Northport and Brentwood stores. (*Id.* ¶ 53.) Kelly further handed Gustavson a notice of termination, advising him that Plaintiff's five franchises were officially terminated. (*Id.* ¶ 54.) DPI then took ownership of Plaintiff's five franchise locations. (*Id.* ¶ 58.)

Plaintiff commenced the instant action in Suffolk County Supreme Court by filing a Summons with Notice on April 1, 1997. The Summons was served upon DPI on July 24, 1997. By Notice dated August 13, 1997, DPI removed the action to this Court. On January 6, 1998, Plaintiff filed and served its Complaint upon DPI.

In the Complaint, Plaintiff brings claims against DPI for (1) breach of the franchise agreements, (2) breach of its oral agreement to purchase the East Northport and Brentwood stores, (3) unjust enrichment, (4) fraud, (5) breach of fiduciary duty and the implied covenant of good faith and (6) punitive damages.

## DISCUSSION

### I. Plaintiff's Late Service of the Complaint

 DPI moves, pursuant to New York Civil Practice Law and Rules Section 3012(b), to dismiss the Complaint for failure to serve timely the Complaint. Although both Plaintiff and DPI apparently agree that CPLR Section 3012(b) should be applied by this Court in determining the propriety of Plaintiff's service of the Complaint, it is well-settled that the Federal Rules of Civil Procedure "apply to civil actions removed to the United States

district courts and govern procedure after removal." [2] Fed.R.Civ.P. 81(c); *see Mroz v. City of Tonawanda*, 999 F.Supp. 436, 449 (W.D.N.Y.1998) ("[A]fter removal questions of procedure are governed by federal law."); *Wright v. Central States, Southeast and Southwest Areas, Health and Welfare Fund*, 440 F.Supp. 1235, 1236 (D.S.C.1977) ("[S]tate law does not control a case removed; where the state law conflicts with federal law, in removal cases, the latter applies. Once removal occurs, the federal rules take over ...."); 14C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 3738, at 390–91 (1998) ("After the removal of an action from state court, ... [t]he case will proceed as if it had been brought in the federal court originally. Thus, it has been settled by numerous cases that the removed case will be governed according to the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters.").

More particularly, while state law governs the sufficiency of service of process before removal, *see, e.g., Marshall v. Warwick*, 155 F.3d 1027, 1033 (8th Cir. 1998), "Rule 4(m) ... applies to removed cases after the date of removal." *Eccles v. National Semiconductor Corp.*, 10 F.Supp.2d 514, 519 (D.Md.1998). *See generally Com/Tech Communication Techs., Inc. v. Wireless Data Sys., Inc.*, 163 F.3d 149, 150–51 (2d Cir.1998) (per curiam) ("Classifying a rule as substantive or procedural is sometimes a subtle undertaking. But where the matter in question is one covered by the Federal Rules of Civil Procedure, 'it is settled that ... the Federal Rule applies regardless of contrary state law.'" (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 n. 7, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (internal citation omitted))). Moreover, "Rule 4(m)'s 120–day period for service

begins to run on the date of removal." *Eccles*, 10 F.Supp.2d at 519; *accord Randolph v. Hendry*, 50 F.Supp.2d 572, 579–80 (S.D.W.Va. May 11, 1999) ("When no defendant has been served, in an action removed to federal court from state court, Rule 4(m) of the Federal Rules of Civil Procedure requires the plaintiff to serve the summons and complaint upon the defendant within 120 days from filing of the Notice of Removal in the federal court."); *Alber v. Illinois Dep't of Mental Health and Developmental Disabilities*, 786 F.Supp. 1340, 1376 (N.D.Ill.1992) ("[T]he 120–day clock runs inexorably ... in a removed case from the date of filing of the notice of removal."). In *Randolph*, the court recognized the potential burden upon an unserved defendant of "restarting the clock" for service of the complaint, but nevertheless reasoned as follows:

> The Court recognizes that the potential prejudicial impact of the Court's calculations will be borne by future defendants who are not served within the time period set forth under state law and who therefore have state procedural justification for dismissal. Placement of the burden on that rare defendant's shoulders is proper, however, because it is that defendant that makes the decision to remove the case to federal court and restarts the clock. Furthermore, restarting the clock for service upon removal eases a terribly unfair burden that could otherwise befall a plaintiff. That is, if [this] Court's calculations are not the law, then a plaintiff filing a complaint in a state that allows for service beyond 120 days—a plaintiff to whom state law might give a deadline of 180 days, for example—could find his case quickly removed by the defendant and dismissed by the federal court prior to the passing of the state deadline for violation of federal procedural requirements that mandate service in federal

2. *Weiss v. Glemp*, 792 F.Supp. 215 (S.D.N.Y. 1992), cited by DPI as support for applying Section 3012(b), is inapposite. There, the Court evaluated under New York law the va- lidity of service *prior* to removal. *Id.* at 224. Here, there is no attack on the validity of service prior to the removal of this action.

cases within 120 days. That untenable result would force cautious plaintiffs to abandon their state-created right to delay service beyond 120 days out of fear that federal procedural law might one day be applied retroactively to their case after the defendant's unilateral act of removal.

50 F.Supp.2d at 579–80.

Accordingly, Plaintiff had 120 days from August 13, 1997—the date on which DPI filed its Notice of Removal—to serve its Complaint upon DPI. As the Complaint was not in fact served until January 6, 1998, nearly five months after the action was removed, such service was untimely under Rule 4(m). Rule 4(m) provides in pertinent part that if service of a complaint upon a defendant is not effected within 120 days of the filing of the complaint (adapted in the removal context to mean within 120 days of the filing of the notice of removal), the court "shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time." If the plaintiff shows good cause for its failure to serve the complaint within the 120–day period, however, the Court "shall extend the time for service for an appropriate period." Fed.R.Civ.P. 4(m).

Because both Plaintiff and DPI relied upon New York law in addressing whether the Complaint should be dismissed for Plaintiff's failure to serve timely its Complaint, neither of course presented any argument with respect to the propriety of dismissal under Rule 4(m). Accordingly, both parties are hereby directed to file with the Court further briefs on that issue. Such briefs shall be filed on or before September 3, 1999.

## CONCLUSION

For the reasons set forth above, DPI's motion to dismiss the Complaint is **DE-NIED** without prejudice. DPI is granted leave to renew its motion, if appropriate,

following the Court's disposition of the Rule 4(m) issue.

**IT IS SO ORDERED.**