[No. H024577. Sixth Dist. July 30, 2003.]

PAUL DENLINGER, Plaintiff and Appellant, v.
CHINADOTCOM CORPORATION, et al., Defendants and Respondents.

## COUNSEL

Bern Steves for Plaintiff and Appellant.

The Louderback Law Firm, Charles M. Louderback, Clarice C. Liu, and Edward Garcia, for Defendents and Respondents.

## OPINION

**RUSHING, P. J.—** ■ Does article 10(a) of The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (the Convention) allow service of process by mail? We conclude that it does. We therefore reverse the trial court's order granting respondents' motion to quash the service of summons and complaint of plaintiff and appellant Paul Denlinger.

### FACTS AND PROCEDURAL BACKGROUND

Respondents Peter Hamilton, Peter YIP Hak Yung, and Raymond Ch'ien are directors and officers of Chinadotcom, a company incorporated in the Cayman Islands with offices in Hong Kong. Respondents work and reside in Hong Kong.

Appellant Denlinger is a former employee of China.com, an entity related to Chinadotcom. Although Denlinger was based in Silicon Valley, he sometimes worked in China and Hong Kong.

After Denlinger was fired, he filed suit in Santa Clara County against respondents, other individual defendants and the Chinadotcom group of corporate entities. He alleged that he was wrongfully terminated. In January 2002, Denlinger's first amended complaint and summons were served by registered mail on respondents in Hong Kong.

Respondents moved to quash the service of summons received by registered post. They asserted that the service was invalid under the Convention. Granting the motion, the trial court decided that the Convention does not allow for service of a summons and complaint on a foreign defendant by mail. The trial court reasoned that such service was invalid "because Article 10(a) [of the Hague Service Convention], which does apply to Hong Kong, does not allow for service of summons and complaint by mail."[1]

This appeal ensued.

### DISCUSSION

■ The Convention provides a mechanism for signatory nations to serve process abroad. It applies when the forum state's internal law requires

---

[1] Although the trial court also quashed instances of attempted service on other individual defendants named in Denlinger's complaint, Denlinger concedes his appeal extends only to the trial court's decision with respect to the attempt to serve by mail respondents Yung, Ch'ien, and Hamilton.

transmittal of documents abroad as a necessary part of service of process. (*Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988) 486 U.S. 694, 700 [100 L.Ed.2d 722, 108 S.Ct. 2104].) It is undisputed that the Convention applies in this case. (See Code Civ. Proc., § 413.10, subd. (c).)

The Convention describes several methods of effecting service of process. The primary method requires member states to designate a "Central Authority" to receive requests of service, arrange for service of documents, and return proofs of service. (See arts. 2–7, Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, reprinted in Fed. Rules Civ. Proc., foll. rule 4, 28 U.S.C.) Alternative methods of service are detailed under articles 8, 9, 10, 11 and 19.[2] (See also *Volkswagenwerk Aktiengesellschaft v. Schlunk, supra*, 486 U.S. at p. 699.)

As pertinent here, article 10(a) states: "Provided the State of destination does not object, the present Convention shall not interfere with—[¶] (a) the freedom to send judicial documents, by postal channels, directly to persons abroad."[3]

According to Denlinger, article 10(a) authorizes service of process by mail. Respondents, by contrast, claim article 10(a) does not apply to service of process; they say it only applies to the mailing of nonservice of process judicial documents.

Courts adopting respondents' view distinguish the use of the word "send" under article 10(a) with the use of the word "service" under articles 10(b), 10(c) and elsewhere under the Convention. (*Bankston v. Toyota Motor Corp.* (8th Cir. 1989) 889 F.2d 172; *Honda Motor Co. v. Superior Court* (1992) 10 Cal.App.4th 1043 [12 Cal.Rptr.2d 861]; *Suzuki Motor Co. v. Superior Court*

---

[2] Article 8 authorizes member nations to use their own diplomatic or consular agents to serve foreign defendants. Article 9 permits member nations to use those agents to forward documents to designated authorities in the receiving nation who in turn serve process on the appropriate parties. Under article 11, two or more signatories may agree, for the purpose of serving judicial documents, to channels of transmission besides those listed in the preceding articles. Article 19 provides that the Convention does not effect the provisions of the internal law of a member state that allow for methods of transmission besides those provided within the Convention, of documents coming from abroad, for service within its territory.

[3] Article 10 states in its entirety: "Provided the State of destination does not object, the present Convention shall not interfere with—[¶] (a) the freedom to send judicial documents, by postal channels, directly to persons abroad, [¶] (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination[,] [¶] (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination."

(1988) 200 Cal.App.3d 1476 [249 Cal.Rptr. 376]; *Golub v. Isuzu Motors* (D.Mass 1996) 924 F.Supp. 324; *Brand v. Mazda Motor of America, Inc.* (D.Kan. 1996) 920 F.Supp. 1169; *Pennebaker v. Kawasaki Motors Corp., U.S.A.* (S.D.Miss. 1994) 155 F.R.D. 153; *Gallagher v. Mazda Motor of America, Inc.* (E.D.Pa. 1992) 781 F.Supp. 1079; *McClenon v. Nissan Motor Corp. in U.S.A.* (N.D.Fla. 1989) 726 F.Supp. 822; *Hantover, Inc., S.N.C. of Volentieri & C. v. Omet* (W.D.Mo. 1988) 688 F.Supp. 1377.)

For example, in *Bankston v. Toyota Motor Corporation, supra*, 889 F.2d 172, the court emphasized the principle of statutory construction that a legislative body acts intentionally and purposely by including language in one part of a statute but excluding it from another. (*Id.* at p. 174.) Since article 10(a) uses the word "send" as opposed to the word "service," these courts reason that "send" does not mean "service of process" and that article 10(a) therefore authorizes the sending by postal channels of only nonservice of process judicial documents. (*Bankston v. Toyota Motor Corporation, supra*, 889 F.2d 174.) Indeed, our own court has followed this view and decided article 10(a) does not allow service of process by mail upon a Japanese defendant. (*Honda Motor Co. v. Superior Court, supra*, 10 Cal.App.4th 1043, 12 Cal.Rptr.2d 861); see also *Suzuki Motor Co. v. Superior Court, supra*, 200 Cal.App.3d 1476.)

At first blush respondents' position has some appeal. However, closer examination of the issue in conjunction with application of the rules regarding the interpretation of treaties persuades us that Denlinger's contention represents the better, and more modern, view. (See, e.g. , *Research Systems Corporation v. Ipsos Publicite* (7th Cir. 2002) 276 F.3d 914, 926; *Schiffer v. Mazda Motor Corp.* (N.D.Ga. 2000) 192 F.R.D. 335, 339; *Randolph v. Hendry* (S.D.W.Va. 1999) 50 F.Supp.2d 572, 578; *Eli Lilly and Cox v. Roussel Corp.* (D.N.J. 1998) 23 F.Supp.2d 460, 471; *EOI Corp. v. Medical Marketing. Ltd.* (D.N.J. 1997) 172 F.R.D. 133, 142; *R. Griggs Group Ltd. v. Filanto SPA* (D.Nev. 1996) 920 F.Supp. 1100, 1104; *Patty v. Toyota Motor Corp.* (N.D.Ga. 1991) 777 F.Supp. 956, 959; *Meyers v. ASICS Corp.* (C.D.Cal. 1989) 711 F.Supp. 1001, 1007; *Hammond v. Honda Motor Co., LTD.* (D.S.C. 1989) 128 F.R.D. 638, 641.)

We start our analysis by reviewing the rules for interpreting treaties. ■ To interpret a treaty, we begin with the treaty's text and the context in which the words are used. For difficult or ambiguous passages, other rules of construction may be used. (*Volkswagenwerk Aktiengesellschaft v. Schlunk, supra*, 486 U.S. at pp. 699–700.) " ' "Treaties are to be construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." ' [Citation.]" (*Id.* at p. 700, italics omitted.)

Both the text and context of the Convention demonstrate that the Convention is meant to apply *only* to service of process, and that fact undermines respondents' claim that article 10(a) is meant to cover the mailing of *nonservice of process* judicial documents only. For example, article 1 of the convention states: "The present Convention shall apply, in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document *for service abroad.*" (Italics added.) Likewise, the Convention preamble advises that the Convention signatories desire "to create appropriate means to ensure that judicial or extrajudicial documents *to be served abroad* shall be brought to the notice of the addressee in sufficient time," and desire "to improve the organization of mutual judicial assistance for *that purpose* by simplifying and expediting *the procedure,* ..." (Italics added.)

The United States Supreme Court's analysis also shows that the Convention was meant to apply *only* to service of process. (*Volkswagenwerk Aktiengesellschaft v. Schlunk, supra,* 486 U.S. at p. 700.) In examining the Convention's negotiating history, *Volkswagenwerk* decided that article 1 "refers to service of process in the technical sense."[4] (*Ibid.*) The court explained that Hague Convention delegates had criticized early drafts of the Convention because they were concerned that its language could apply to transmissions that did not involve service of process. Consequently, the final text of article 1 was altered to make clear that the Convention "applies only to documents transmitted for service abroad." (*Id.* at p. 701.)

Given this scope and purpose of the Convention as revealed by its text and the United States Supreme Court, the view that article 10(a) does *not* apply to service of process makes little sense. As one court observed, "[t]he placement of one lone subprovision dealing with the mailing of nonservice documents in the midst of fifteen articles addressing service of process, would be inconsistent with the structure of the entire convention." (*R. Griggs Group, Ltd. v. Filanto Spa, supra,* 920 F.Supp. at p. 1105.) In finding that article 10(a) applied to service of process, another court reasoned: "Were that not the case—if the contrary interpretation were correct—then the Article 10(a) provisions would be terribly misplaced. It would be a provision that allows for the use of the mails, but would not provide any guidance on the issue of service of documents abroad—the only issue that the Hague Convention was intended to address." (*Randolph v. Henry, supra,* 50 F.Supp.2d at p. 577, fn. omitted.)

In addition, although it is correct that the word "serve" or "service" is used relatively consistently within the Convention, article 10(a) is not the only

---

[4] According to *Volkswagenwerk,* service of process "refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action. [Citations.]" (*Volkswagenwerk Aktiengesellschaft v. Schlunk, supra,* 486 U.S. at p. 700.)

provision within the Convention that does not use those terms. Specifically, article 21 requires official notification by member states if they object to "methods of transmission" provided for under articles 8 and 10. Quite obviously, "transmission" is used under article 21 as a synonym for "service." (See *Volkswagenwerk Aktiengesellschaft v. Schlunk, supra*, 486 U.S. at p. 707 ["[t]he only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service"]; *R. Griggs Group, Ltd. v. Filanto Spa, supra*, 920 F.Supp. at p. 1105.) Thus, the Convention's drafters did not rely exclusively upon the word "service" to describe the concept of formal service of process and that weakens respondents' position that the word "send" should not be considered a synonym for service of process.

Sources used as aids in interpreting treaties strongly support the view that article 10(a) authorizes service of process by mail. For instance, in 1977 and 1989, a special commission comprised of experts chosen by signatory governments met and debated the topic of the Convention. The discussion resulted in the 1983 publication of a handbook to be used as a guide to the Convention, and a 1992 update to that handbook. (See Practical Handbook On The Operation Of The Hague Convention Of 15 November 1965 On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters (2d ed. 1992) (hereinafter Handbook); see also *R. Griggs Group, Ltd. v. Filanto Spa, supra*, 920 F.Supp. at p. 1106.)

The Handbook indicates that article 10(a) refers to service of process. (Handbook, *supra*, at pp. 43–45.) The Handbook criticizes the line of cases, including the Eighth Circuit *Bankston* decision, that hold that article 10(a) does not allow mail service. (Handbook, *supra*, at pp. 43–45, see also *R. Griggs Group, Ltd. v. Filanto Spa, supra*, 920 F.Supp. at p. 1106.) According to the Handbook, the view of these courts "contradict what seem to have been the implicit understanding of the delegates at the 1977 Special Commission meeting, and indeed of the legal literature on the Convention and its predecessor treaties." (Handbook, *supra*, at p. 44.)

In concluding that article 10(a) permits service of process by mail, the Handbook observes that the French version of the three predecessor treaties to the 1965 Convention all used the verb "adresser" in substantially the same context. The 1965 Convention—which was the first text having an official English version—used the word "send" under article 10(a). Thus, the Handbook reasons that the Convention's history does not suggest that the word "send" under article 10(a) was intended to mean something other than service of process. (Handbook, *supra*, at p. 44.)

The 1989 report of the special commission itself also indicates that article 10(a) allows service of process by mail. In discussing article 10(a), the report

states: "It was pointed out that the postal channel for service constitutes a method which is quite separate from service via the Central Authorities or between judicial officers. Article 10[(a)] in effect offered a reservation to Contracting States to consider that service by mail was an infringement of their sovereignty. Thus, theoretical doubts about the legal nature of the procedure were unjustified." (Special Commission Report On The Operation Of The Hague Service Convention And The Hague Evidence Convention, reprinted at 28 I.L.M. 1556, 1561 (1989) (hereinafter Special·Commission Report).) As these comments reveal, the Commission believed article 10(a) referred to service of process by mail, with signatories being given the option of objecting to the procedure if they believed it infringed upon their sovereignty.

Another source used as an aid in interpreting treaties, the Executive Branch, also convinces us that article 10(a) permits service of process by mail. In particular, the State Department has interpreted article 10(a) as allowing service of process by mail so long as the recipient country has not objected. (30 I.L.M. 260, 261 (1991).)[5] The State Department expressly rejected the *Bankston* court's contrary holding: " 'We therefore believe that the decision of the Court of Appeals in Bankston is incorrect to the extent it suggests that the Hague Convention does not permit as a method of service the sending of a copy of the summons and complaint by registered mail to a defendant in a foreign country ....' " (30 I.L.M., *supra* at p. 26.) Courts often give great weight to treaty interpretations made by the Executive Branch. (See Rest.3d Foreign Relations Law of the U.S. (1986) § 326(2).)

Review of the declarations of other signatories is also illuminating since they reveal a belief that article 10(a) referred to a method of service. For example, the declaration of Canada states: "Canada does not object to service by postal channels." (Convention, *supra*, as reprinted in Fed. Rules Civ. Proc., foll. rule 4, 28 U.S.C.) The declaration of Czechoslovakia states: "[I]n accordance with Article 10 ... documents may not be served by another contracting State through postal channels ...." (*Id.* at p. 50.) The declaration of Pakistan provides: "Pakistan ... has no objection to such service by postal channels directly to the persons concerned [Article 10(a)] ...." (*Id.* at p. 56.) The declaration of Turkey states: "[I]t is opposed to the use of the methods of serving documents listed in Article 10 ...." (*Id.* at p. 59.) With regard to Article 10(a), the declaration of Venezuela provides that it "does not agree to the transmission of documents through postal channels."

---

[5] Letter from Alan J. Krezco, United States Department of State Deputy Legal Advisor, to Administrative Office Of the United States Courts and National Center for State Courts (Mar. 14, 1991), reprinted in part in *United States Department of State Opinion Regarding the Bankston Case and Service By Mail to Japan under the Hague Service Convention*, 30 I.L.M. 260, 261 (1991).

(*Id.* at p. 62.) The postratification understanding of signatory countries is a legitimate tool in determining the meaning of a treaty. (*Zicherman v. Korean Air Lines Co.* (1996) 516 U.S. 217, 226 [133 L.Ed.2d 596, 116 S.Ct. 629].)

Quite naturally, respondents rely upon cases reaching a different result. They especially stress *Honda Motor Co. Ltd. v. Superior Court, supra,* 10 Cal.App.4th 1043, the 1992 opinion decided by this court. But *Honda* did not have the benefit of considering the state department declaration, the Special Commission Reports, the understanding of the signatories, or the Handbook on the Convention. As already noted, these sources are entitled to significant weight in treaty interpretation. (*Volkswagenwerk Aktiengesellschaft v. Schlunk, supra,* 486 U.S. at p. 699–700.) "[B]ecause a treaty ratified by the United States is not only the law of the land ... [b]ut also an agreement among sovereign powers, we have traditionally considered as aids to its interpretation the negotiating and drafting history ... and the postratification understanding of the contracting parties." (*Zichwerman v. Korean Air Lines Co., supra,* 516 U.S. at p. 226.) Also, *Honda* considered the effect of article 10(a) upon a Japanese defendant, and buttressed its conclusion by emphasizing that private mail service is not authorized in Japan. We are not faced with that circumstance. (*Honda Motor Co. v. Superior Court, supra,* 10 Cal.App.4th at p. 1047.)

Bruno Ristau, a leading commentator on the Convention, has also reasoned that article 10(a) applies to service of process by mail. (1 Ristau, International Judicial Assistance (Civil and Commerical) (1984) § 4–10, 132.)[6] He observes that the negotiating history of article 10 indicates that service of process by mail was authorized. (Ristau, at p. 205.) Other commentators share Ristau's stance. (See, e.g., McCauseland, Note and Comment, *How May I Serve You? Service of Process by Mail Under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters* (1992) 12 Pace L.Rev. 177; Comment, *Foreign Service of Process By Direct Mail Under the Hague Convention And The Article 10(a) Controversy: Send v. Service,* 21 Cumb.L Rev. 647 (1991).)

We think the view that article 10(a) allows service of process by mail represents the better position. As discussed above, permitting service by mail under article 10(a) is consistent with the logic and structure of the Convention itself, with the interpretative materials on the issue, including the Special Commission Report, the Handbook, and State Department documents, is consistent with the understanding of some of the signatories, and also furthers

---

[6] Ristau was the former director of the Office of Foreign Litigation of the United States Department of Justice, and served as the United States representative to the 1977 and 1989 special commissions that discussed the operation of the Convention. (See *R. Griggs Group, Ltd. v. Filanto Spa, supra,* 920 F.Supp. at p. 1106, fn. 9.)

the Convention's primary purpose of establishing a uniform, simple and efficient system for establishing service abroad. Allowing service of process by mail, so long as the signatory does not object, promotes a smooth and efficient international legal system. Indeed, as methods of communicating continue to evolve, disallowing service of process by mail seems antiquated and out of step with the modern world.[7] For all these reasons, we conclude that article 10(a) provides for service of process by mail.

Having so concluded, we very briefly address respondents' contention that Hong Kong has objected to article 10(a). The trial court found to the contrary, and our review supports its conclusion.

In particular, in a June 10, 1997 notification, the People's Republic of China stated that, with respect to Hong Kong, it was objecting to article 10(b) and article 10(c) but stated nothing about article 10(a), raising no objection to that provision. The People's Republic of China's statement provided, in pertinent part: "*With reference to the provisions of Sub-paragraphs (b) and (c) of Article 10 of the Convention, documents for service through official channels will be accepted in the Hong Kong Special Administrative Region only by the Central Authority or Other Authority designated, and only from judicial, consular or diplomatic officers of other Contracting States.*" (Convention, *supra*, as reprinted in Martindale Hubbell Internat. L. Dig. (2003), p. IC–5.)

Since Hong Kong has not objected to article 10(a), it applies in these circumstances. As we have already decided, article 10(a) authorizes service of process by mail. It is undisputed that Denlinger served respondents by registered mail. Because article 10(a) authorizes service of process by mail, and Denlinger served respondents by mail, it follows that the trial court erred in granting respondents' motion to quash the service of Denlinger's summons and complaint.

## DISPOSITION

The trial court's order is reversed. Costs on appeal to appellant Denlinger.

Elia, J., and Mihara, J., concurred.

---

[7] See Conley, *Service with a Smiley: The Effect of Email and Other Electronic Communications on Service of Process* (1997) 11 Temp. Internat. & Comp. L.J. 407 (describing first case to permit service of process by email).