[No. B216672. Second Dist., Div. Four. May 6, 2010.]

In re JENNIFER O. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
MARTIN O., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part B. of the Discussion.

**COUNSEL**

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant.

Byron G. Shibata, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**MANELLA, J.**—Appellant Martin O., father of Jennifer, Brian and Jesus, appeals the juvenile court order issued at the six-month review hearing which terminated his reunification services.[1] Appellant, a resident of Mexico, contends service of notice of the hearing was governed by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and

---

[1] We elect to refer to the parties by their first name and last initial. (See *In re Edward S.* (2009) 173 Cal.App.4th 387, 392, fn. 1 [92 Cal.Rptr.3d 725].)

Commercial Matters, November 15, 1965, 20 U.S.T. 361 (the Hague Service Convention or the Convention) and that the Convention required service by registered mail. Appellant further contends that the Los Angeles County Department of Children and Family Services (DCFS) failed to provide adequate reunification services. We affirm. In the published portion of the opinion, we hold that the Hague Service Convention does not apply to service of notice of review hearings.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Prior Appeal*

This is the second time this case has been before us. As discussed in our prior opinion, appellant's three children were detained in June 2008, along with three half siblings, as a result of the alleged physical and sexual abuse of Jennifer, then 16 years old.[2] The court sustained findings under Welfare and Institutions Code section 300, subdivision (a) (serious physical harm), subdivision (b) (failure to protect), subdivision (d) (sexual abuse) and subdivision (g) (no provision for support).[3] Under subdivision (a), the court found that Mother "used a safety pin and a knife to scrape ink marks, which [Mother] believed to be tattoos, from the skin on [Jennifer's] wrist and leg" and had on prior occasions "inappropriately and excessively physically disciplined [Jennifer] by pulling [her] hair and striking [her] face." Under subdivision (d), the court found that the children's stepfather, Carlos, "made sexual comments and gestures toward [his stepdaughter Jennifer], causing the child to feel sexually threatened," including "fondling her legs and vaginal area over her clothing." In two findings that pertained to appellant, the court found under section 300, subdivisions (b) and (g), that appellant "failed to provide the children with the necessities of life including food, clothing, shelter and medical care."

In multiple interviews, Mother informed the caseworker that appellant was the father of the children and that he was living in Mexico. The caseworker located appellant in Mexico and spoke with him by telephone in July 2008. He confirmed that he was the children's father. The children referred to appellant as their father. DCFS obtained the birth certificates for the children, which identified appellant as their father. Prior to the June 23, 2008 detention hearing, Mother filled out a paternity questionnaire under penalty of perjury which stated that although appellant had not signed papers establishing paternity at the hospital and had never been married to Mother, Mother and

---

[2] The half siblings, the children of Juana G. (Mother) and her husband, Carlos F., are not involved in this appeal. Jennifer, who will turn 18 in June of this year, is not a subject of this appeal.

[3] Undesignated statutory references are to the Welfare and Institutions Code.

appellant were living together at the time of the children's birth, and appellant held himself out as the children's father and accepted the children openly in his home.[4]

Although the court found true that appellant had held himself out as the children's father and openly accepted the children into his home, creating a presumption of fatherhood under Family Code section 7611, subdivision (d), the court concluded the presumption had been dissipated by appellant's subsequent abandonment of the children. In *In re J.O.* (2009) 178 Cal.App.4th 139 [100 Cal.Rptr.3d 276], we concluded that the section 7611, subdivision (d) presumption had not been rebutted and reversed the juvenile court's finding that appellant was not entitled to presumed father status.[5]

### B. Current Appeal

#### 1. Notice to Appellant of Juvenile Proceedings

At the time of the June 2008 detention hearing, appellant's whereabouts were unknown. Located and contacted by the caseworker in July 2008, appellant told the caseworker he was interested in obtaining custody of the children.[6] In time for the jurisdictional/dispositional hearing, the caseworker obtained an address for appellant in Mexico and served multiple notices of the hearing on him in English and Spanish by certified or registered mail. Copies of the section 300 petition were attached to the notices. At a hearing on July 22, the court appointed counsel for appellant and noted that although appellant had been served with notice of the hearing and a copy of the petition, notice was inadequate because the petition itself had not been translated into Spanish. Accordingly, the court continued adjudication and disposition with respect to appellant and ordered that he be renoticed. DCFS renoticed appellant in English and Spanish at his Mexican address by registered or certified mail. The proofs of service stated that copies of the petition translated into Spanish had been attached to the notices. The caseworker also called appellant's telephone number and left a detailed message concerning the upcoming court dates.

At the jurisdictional/dispositional hearing on August 26, 2008, the court stated that appellant, though not present, had been properly served with

---

[4] At the hearing, Mother was questioned by the court and confirmed that all three of the children had lived with appellant from their births until the couple separated in 1996.

[5] We affirmed the court's jurisdictional finding with respect to appellant under section 300, subdivision (g).

[6] The caseworker thereafter contacted the Mexican consulate and asked that DIF (Desarrollo Integral de la Familia, a Mexican social services agency) conduct an assessment of appellant's home. The caseworker also sent a letter requesting the consulate's assistance. The caseworker did not receive a response and in later telephone calls, was unable to get through to the person at the consulate with whom she had discussed the matter.

notice. Appellant's counsel did not object or raise any issue related to notice. Counsel contended on appellant's behalf that he should be declared the presumed father. Counsel also argued that the petition should be dismissed as to appellant and that the children should be released to him.[7]

## 2. Reunification Period

Although the court found appellant to be the alleged father only, it ordered reunification services for him. Appellant was to participate in drug testing and if he tested positive, to complete a drug rehabilitation program. Appellant was also ordered to complete a parenting course, and to visit or contact the children in order to form a relationship with them.

On August 26, 2008, the caseworker spoke with appellant by telephone. She provided the telephone numbers where the children could be reached and advised appellant to contact DIF to obtain referrals for services and a home assessment. Caseworkers were never again able to reach appellant by telephone and appellant did not contact DCFS. In addition, DCFS received no evidence that appellant had ever contacted the children or DIF.

In the February 2009 report prepared for the six-month review hearing, the caseworker stated that Mother had successfully completed 14 sessions of parenting education, was enrolled in a domestic violence program for anger management and a sexual abuse awareness program, and was undergoing counseling. The report stated that there would be a "moderate" risk if the children (not including Jennifer) were returned to Mother and Carlos, and that DCFS would "use its discretion to liberalize visits for parents [Mother and Carlos] with [the] children [not including Jennifer] . . . to unmonitored in a public setting." With respect to appellant, the caseworker reported that she had attempted to call him, but that his telephone "seemed busy."[8] On January 19, 2009, the caseworker sent appellant a letter at his last known address. Having heard nothing from appellant for some time and having no reason to believe he was in compliance with the reunification plan, DCFS recommended that his reunification services be terminated.

## 3. Six-month Review Hearing

At the February 2009 hearing, the court granted Mother unmonitored visitation with all the children except Jennifer. With respect to appellant, the

---

[7] As discussed, the court ruled that appellant was the alleged father only, found true the jurisdictional allegations of the petition and detained the children from both parents.

[8] The caseworker who successfully reached appellant in July and August 2008 listed a phone number for appellant in her report. In subsequent reports, the number listed had either additional or missing digits. The caseworker who attempted to reach appellant in 2009, reportedly using the modified numbers, was unsuccessful.

court continued the matter to March and asked the caseworker to provide new notice to appellant and to prepare a supplemental report concerning the efforts to provide reunification services to appellant. In the March 2009 supplemental report, the caseworker stated that she or prior caseworkers had attempted to contact appellant telephonically on the following dates: October 27, November 13 and December 3, 2008; January 5, January 7, January 27, February 17, February 18, February 24, February 25, February 26, March 1, March 4, March 5, and March 10, 2009. In addition, the caseworkers sent Spanish-language letters to appellant on October 23, November 26 and December 29, 2008 and on January 14, February 17 and March 4, 2009. The letters discussed the pending proceeding and advised appellant to contact DCFS. Spanish- and English-language notices of the upcoming six-month review hearing and the fact that DCFS recommended termination of reunification services were sent to appellant at his last known address by first-class mail on March 3 and March 10, 2009.

The court continued the review hearing to April 2009, instructed the parents to return without further order, notice or subpoena and instructed appellant's counsel to give notice of the continuance to appellant. At the hearing, appellant's counsel raised for the first time the issue of proper notice under the Hague Service Convention. Appellant's counsel also contended that appellant had not been provided reasonable services. She conceded, however, that she had not spoken to appellant since August 2008, prior to the disposition, and that he had never complained to her about lack of services. The court found that appellant had been properly served with the petition and notice of the August 2008 jurisdictional/dispositional hearing. The court also found that notice of the six-month review hearing and of DCFS's recommendation to terminate reunification services had been properly sent. Finding the reunification services afforded adequate, the court terminated appellant's reunification services with respect to Brian and Jesus.[9]

## DISCUSSION

### A. *Notice of Six-month Review Hearing*

■ In dependency matters, parents are entitled to notice and an opportunity to be heard at every stage of the proceeding in order to protect their fundamental interest in the companionship, care, custody and management of their children. (*In re B. G.* (1974) 11 Cal.3d 679, 688–689 [114 Cal.Rptr. 444, 523 P.2d 244]; *In re DeJohn B.* (2000) 84 Cal.App.4th 100, 106 [100 Cal.Rptr.2d 649].) But parents are not served with process in the usual sense.

---

[9] At the same hearing, the court returned Brian and Jesus to Mother's home under DCFS supervision. Accordingly, the court did not schedule a section 366.26 hearing.

(Cf. Code Civ. Proc., § 413.10 et seq. [governing service of summons and complaint on defendant in civil action].) Dependency proceedings often commence on an emergency basis with a detention hearing, and under section 290.1, notice of a detention hearing may be "written or oral." (§ 290.1, subd. (e).) If the parents were present at the detention hearing, it is permissible to thereafter serve a copy of the petition and a notice of the jurisdictional and dispositional hearings by first-class mail. (§ 291, subd. (e)(2); see *In re Raymond R.* (1994) 26 Cal.App.4th 436, 441 [31 Cal.Rptr.2d 551] ["A parent's general appearance at the detention hearing will be considered a waiver of the parent's right to challenge adequacy of notice of the proceedings."].) If parents were not present at the detention hearing, they must be personally served with a copy of the petition and notice of the jurisdictional and dispositional hearings served by "certified mail, return receipt requested." (§ 291, subd. (e)(1).) Notice of the review hearings held under section 366.21 and 366.22, which generally follow the jurisdictional and dispositional hearings, may be provided by "first-class mail addressed to the last known address of the person to be noticed." (§ 293, subd. (e).)

While appellant's brief includes a heading that appears to question whether service was sufficient under section 293, he concedes that section 293 "only requires service by first class mail" and acknowledges that "the Spanish version of [appellant's] notice [of the six-month review hearing] was . . . sent by first class mail." With respect to service of notice of the original jurisdictional/dispositional hearing and the section 300 petition, appellant notes that "[t]he court concluded service of notice . . . was proper under the Convention and under section 291" and concedes that "[t]he record supports the court's finding because notice was sent by registered mail and included Spanish translations of the notice and the petition." He contends, however, that the Hague Service Convention required DCFS to serve notice of the six-month review hearing by "international registered mail, return receipt requested." We disagree.[10]

"The Hague Service Convention is a multilateral treaty that was formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law. The Convention revised parts of the Hague Conventions on Civil Procedure of 1905 and 1954. The revision was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." (*Volkswagenwerk Aktiengesellschaft v.*

---

[10] On appeal, respondent initially conceded that DCFS failed to provide proper notice of the hearing under the Hague Service Convention. As the authorities cited by the parties did not support that proposition, we sent a letter pursuant to Government Code section 68081 asking counsel to further address the issue. In supplemental briefing, respondent contended that the Hague Service Convention did not require notice of a review hearing to be sent to a parent by registered or certified mail.

*Schlunk* (1988) 486 U.S. 694, 698 [100 L.Ed.2d 722, 108 S.Ct. 2104] (*Volkswagenwerk*).) "Article 1 defines the scope of the Convention . . . . It says: 'The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.' " (*Id.* at p. 699.) In *Volkswagenwerk*, the Supreme Court explained that in its view, "Article I refers to service of process in the technical sense" and further explained: "[T]he term 'service of process' has a well-established technical meaning. Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." (*Id.* at p. 700.) The court concluded that "[t]he only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service." (*Id.* at p. 707; accord, *Denlinger v. Chinadotcom Corp.* (2003) 110 Cal.App.4th 1396, 1401 [2 Cal.Rptr.3d 530] ["Both the text and context of the [Hague Service] Convention demonstrate that the Convention is meant to apply only to service of process . . . ." (italics omitted)]; *R. Griggs Group, LTD v. Filanto Spa* (D.Nev. 1996) 920 F.Supp. 1100, 1105 ["[T]he Convention as a whole does not purport to address aspects of litigation other than service of process . . . ."].)

■ Because the Hague Service Convention governs only "service of process in the technical sense" and in a dependency proceeding, there is no service of process in the technical sense, an issue exists as to whether it applies at all to dependency proceedings. The issue was addressed by two courts, in *In re Alyssa F.* (2003) 112 Cal.App.4th 846 [6 Cal.Rptr.3d 1] (*Alyssa F.*) and *In re Jorge G.* (2008) 164 Cal.App.4th 125 [78 Cal.Rptr.3d 552] (*Jorge G.*). Both courts concluded that when the parent is a resident of Mexico or other signatory nation, the petition and notice of jurisdictional and dispositional hearings must be served pursuant to the Convention's requirements. (*Alyssa F., supra*, 112 Cal.App.4th at p. 854; *Jorge G., supra*, 164 Cal.App.4th at p. 134.) The courts stated that such service was required in order to acquire "personal jurisdiction" over the nonresident parent. (*Alyssa F., supra*, 112 Cal.App.4th at pp. 851–852; *Jorge G., supra*, 164 Cal.App.4th at p. 133.) Neither *Alyssa F.* nor *Jorge G.* suggested that the Hague Service Convention procedures should be applied to every notice of hearing served in a dependency action or that subsequent notices must be served with the formality of the petition and notice of jurisdictional/dispositional hearing.

As there is no authority for the proposition that Hague Service Convention procedures must be followed whenever any judicial notice of any kind is served on a parent residing outside the United States, we turn for guidance to the general rule: a court acquires jurisdiction over a party by proper service of process or by that party's general appearance; once either occurs, jurisdiction continues throughout the action and service of subsequent pleadings and

papers can be by less formal means.[11] (See *In re Larry P.* (1988) 201 Cal.App.3d 888, 895 [247 Cal.Rptr. 472], citing 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 332, p. 750 ["Once jurisdiction of the subject matter and of the person is obtained in a particular action, that jurisdiction continues throughout the action and in proceedings incidental thereto."]; Code Civ. Proc., § 410.50 ["(a) Except as otherwise provided by statute, the court in which an action is pending has jurisdiction over a party from the time summons is served . . . . A general appearance by a party is equivalent to personal service of summons on such party. [¶] (b) Jurisdiction of the court over the parties and the subject matter of an action continues throughout subsequent proceedings in the action."]; *Thierfeldt v. Marin Hosp. Dist.* (1973) 35 Cal.App.3d 186, 198 [110 Cal.Rptr. 791] [Code Civ. Proc. provisions permitting service by mail "apply to service of notices in a pending action upon a party who has appeared or has been served in that action."].)

 Here, there can be no dispute that appellant was aware of the pendency of juvenile court proceedings involving his three children, and made a general appearance, thus permitting service of the subsequent notice of the six-month review hearing by mail. The record reflects that in August 2008, DCFS served multiple copies of the petition and notice of the jurisdictional/dispositional hearing in English and Spanish by certified or registered mail to the address reported by appellant in July 2008. The caseworker also discussed the matter with appellant over the telephone. Counsel was appointed for appellant, and appeared at the jurisdictional/dispositional hearing to argue on his behalf without raising any issue regarding the adequacy of service. Appellant filed a notice of appeal of the jurisdictional order, making another general appearance and confirming his submission to the jurisdiction of the court. Thereafter, notice of the six-month review hearing was served by mail on appellant at his last known address, which complied with California law. (§ 293, subd. (e); *In re DeJohn B., supra,* 84 Cal.App.4th at p. 107.) Accordingly, notice of the six-month review hearing was properly served.

---

[11] The court in *Alyssa F.* indicated its adherence to this rule. Noting that because the father had "generally appeared" by filing the appeal, the court observed that "on remand, the trial court will have personal jurisdiction over [the father] without further service being required" and "the [juvenile] court will have personal jurisdiction over [the father] to conduct a new jurisdictional hearing and other proceedings." (*Alyssa F., supra,* 112 Cal.App.4th at pp. 851–852; see also *Bank of America v. Carr* (1956) 138 Cal.App.2d 727, 735 [292 P.2d 587] ["[An] appeal involving matters of substance is considered a general appearance which gives jurisdiction of the person for the future . . . . [O]n remand[,] the lower court will have jurisdiction over the person of appellant without further process."].)

In a supplemental brief, appellant focuses on the phrase "[s]ervice of the notice" in section 293, subdivision (e), contending that the requirement that notice of the six-month review hearing be "served" triggers the Hague Service Convention because the Convention applies by its terms to "all cases in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." This was resolved in *Volkswagenwerk*, where the Supreme Court held that despite the provision's broad language, the Convention applied only to service of process in the technical sense, defined as "formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." (*Volkswagenwerk, supra*, 486 U.S. at p. 700.)

Appellant contends that *Volkswagenwerk*'s definition of service of process "must be evaluated in relation to the . . . different statutory requirements and differing due process concerns" applicable in a dependency action. The differing due process concerns are reflected in the statutes governing notice and service—sections 290.1 to 297—which have different requirements depending on the type of hearing involved and the potential consequence on parental rights. For example, section 294 requires service of notice of a section 366.26 hearing where the recommendation is to terminate parental rights to be by personal service or certified mail, return receipt requested (§ 294, subd. (f)(2)–(5)), but permits service by first-class mail where the recommendation is legal guardianship or long-term foster care (§ 294, subd. (f)(6)). Section 290.2, subdivision (c)(2), requires service of a petition and notice of hearing concerning a child who is not detained to be first served by mail and followed up, if the parent does not appear, by a new hearing noticed by personal service. As discussed, section 290.1, subdivision (e), permits notice of the detention hearing to be "oral," and section 291, subdivision (e)(1), requires the petition and notice of the jurisdictional/dispositional hearing to be served on a parent who was not present at the detention hearing by personal service or certified mail, return receipt requested. With respect to review hearings, including the hearing at which reunification services may be terminated, the Legislature has determined that notice by first-class mail is sufficient to comply with due process. (§ 293, subd. (e).) The statutory scheme places on the parent the responsibility of keeping DCFS apprised of his or her current mailing address, so that mailed notices do not go awry. (§ 316.1; Cal. Rules of Court, rule 5.534(m).)

While there can be no dispute that due process prohibits courts from interfering with parental rights without adequate notice, dependency procedures and statutory notice requirements are based on the principle that parents can be expected to exert some effort to keep apprised of their children and their welfare. Appellant has been an absentee father for many years, content to entrust the upbringing of his children to Mother and Carlos. Aware of the dependency proceeding and of the serious nature of the

allegations against Mother and Carlos, he did nothing to secure his custodial rights, and failed to keep DCFS informed of his whereabouts.[12] Service of notice on appellant of the six-month review hearing by first-class mail fully complied with California law, and we find no violation of appellant's due process rights or any rights under the Hague Service Convention.

B. *Reunification Services**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The order terminating appellant's reunification services is affirmed.

Epstein, P. J., and Suzukawa, J., concurred.

On May 27, 2010, the opinion was modified to read as printed above.

---

[12] In a request for judicial notice which this court granted, respondent provided evidence that letters sent to appellant in 2009 at the address he provided the caseworker have been returned by the postal service.

*See footnote, *ante*, page 539.