Filed 3/22/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| WHYENLEE INDUSTRIES LTD.,<br>　　　Petitioner,<br>v.<br>THE SUPERIOR COURT OF SAN MATEO COUNTY,<br>　　　Respondent;<br>ZHIZE HUANG et al.,<br>　　　Real Parties in Interest. | A155008<br><br>(San Mateo County<br>Super. Ct. No. 16CIV00267) |

Whyenlee Industries Ltd. (Whyenlee), a defendant below, petitions for a writ of mandate directing the trial court to grant its motion to quash service of a summons.[1] Because plaintiffs used an agent to serve a summons on Whyenlee in Hong Kong without first making a request to the Hong Kong government's Central Authority, Whyenlee now argues this attempt at service of process was ineffective under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638) ("Hague Service Convention" or "Convention"). We disagree and will deny writ relief.

## I. BACKGROUND

Plaintiffs Zhize Huang and Wuxi Luoshe Printing and Dyeing Co., Ltd. ("plaintiffs") sued several defendants to, among other things, "set aside various fraudulent and voidable transactions." Defendants allegedly made these transactions to

---

[1] We will refer to the parties by either their names or trial designations for clarity and ease of reference.

1

"hide millions of dollars in assets" after plaintiffs obtained a $68 million judgment in 2016 against one of the individual defendants, Anshan Li.

In April 2017, plaintiffs filed a second amended complaint in this action adding as a defendant Admiring Dawn International, Ltd. (Admiring Dawn), a Hong Kong entity. Plaintiffs retained the services of ABC Legal to work with the Central Authority in Hong Kong to serve Admiring Dawn. In July 2017, Hong Kong's Central Authority issued a certificate stating it was unable to serve Admiring Dawn.

Plaintiffs then made two attempts to serve Admiring Dawn via mail with return receipt requested. On both occasions, the envelope was returned to plaintiffs unopened.

In December 2017, Admiring Dawn filed a "Notice of Change of Company Name," to change its name from Admiring Dawn to Whyenlee. In February 2018, plaintiffs filed a Third Amended Complaint naming Whyenlee as a defendant. Plaintiffs alleged that Whyenlee "is a private corporation registered in Hong Kong that was formally known as Admiring Dawn International, Ltd."

Plaintiffs retained a Hong Kong-based law firm, CFN Lawyers, to assist with serving Whyenlee. CFN Lawyers advised plaintiffs they could personally serve Whyenlee through an agent in Hong Kong, and that plaintiffs did not need to effect service through a judicial officer or public official. In March 2018, plaintiffs used an agent to serve Whyenlee personally. Plaintiffs also sent the service documents via first class mail to Whyenlee.

Whyenlee moved to quash service of the summons. Whyenlee argued that plaintiffs failed to comply with the Hague Service Convention because they used an agent to directly serve Whyenlee without first obtaining permission from Hong Kong's Central Authority.

The trial court denied the motion to quash, concluding that plaintiffs' service of process in March 2018 "was valid, and consistent with the Hague Convention, Hong Kong law, California law, and constitutional Due Process."

Whyenlee then filed the petition for a writ of mandate that is now before us, and we issued an order to show cause.

## II. DISCUSSION

"The Hague Service Convention is a multilateral treaty that was formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law. The Convention revised parts of the Hague Conventions on Civil Procedure of 1905 and 1954. The revision was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." (*Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988) 486 U.S. 694, 698 (*Volkswagenwerk*).)

There is no dispute the Hague Service Convention applies in this case. (See Hague Conference on Private International Law (Hague Conference), Status Table: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters <https://www.hcch.net/en/instruments/conventions/status-table/?cid=17> [as of March 21, 2019] [United States listed as party to Hague Service Convention]; *Declaration/Reservation/Notification* <https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn> [as of March 21, 2019] [Hague Service Convention extended to Hong Kong]; Code Civ. Proc., § 413.10, subd. (c) [rules of civil procedure are subject to the Hague Service Convention]; *Denlinger v. Chinadotcom Corp.* (2003) 110 Cal.App.4th 1396, 1398–1399 [Convention applies to service in Hong Kong]).) "Failure to comply with the Convention renders the service void, even if the defendant has actual notice of the lawsuit." (*Balcom v. Hiller* (1996) 46 Cal.App.4th 1758, 1763 (*Balcom*).)

"Articles 2 through 6 of the Convention establish a system whereby each participating country will organize and designate a 'Central Authority' to receive, and to reject or to execute, and to certify requests for service of process from parties in other participating states." (*Balcom, supra*, 46 Cal.App.4th at p. 1764; see arts. 2-6, Hague Service Convention.) "Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving

3

state or by a method designated by the requester and compatible with that law." (*Volkswagenwerk, supra,* 486 U.S. at p. 697.)

"Submitting a request to a central authority is not, however, the only method of service approved by the Convention." (*Water Splash, Inc. v. Menon* (2017) 581 U.S. ___, ___ [137 S.Ct. 1504, 1508] (*Water Splash*).) As relevant here, Article 10 of the Convention states: "Provided the State of destination does not object, the present Convention shall not interfere with -- [¶] . . . [¶] b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination, [or] [¶] c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." (Art. 10, Hague Service Convention.)

Thus, Article 10 contemplates that, unless an objection is made by the destination state, a party may effect service through a "competent person[] of the State of destination," such as an authorized process server. (See *Balcom*, *supra*, 46 Cal.App.4th at p. 1764; see also Amram, *The Proposed International Convention on the Service of Documents Abroad* (1965) 51 A.B.A.J. 650, 653 ["Article 10 permits . . . the direct use of process services in the state addressed, unless that state objects to such service."][2]; Hague Conference, Practical Handbook on the Operation of the Service Convention (4th ed. 2016), pp. 93-94 [Articles 10(b) and 10(c) allow service "directly through" competent persons of the destination state].)

Whyenlee does not dispute that it received the summons in this case. Nor does it dispute that the agent in Hong Kong who personally provided Whyenlee with the summons was, under Hong Kong law, a "competent person[] of the State of destination"

---

[2] Philip W. Amram "was the member of the United States delegation who was most closely involved in the drafting of the Convention." (*Water Splash*, *supra*, 137 S.Ct. at p. 1511.) His article summarizing the Convention has been cited favorably by the United States Supreme Court. (See *ibid.*)

to serve process. Whyenlee contends, however, that Hong Kong has objected to Article 10 of the Convention, and that as a result, personal service under Article 10 is unauthorized in Hong Kong unless a party first makes a request for service to Hong Kong's Central Authority.

According to Whyenlee, the purported objection was first made in 1970 when the Convention was extended to Hong Kong by the United Kingdom of Great Britain and Northern Ireland (United Kingdom), which at the time exercised control over Hong Kong. (Hague Conference, *Declaration/Reservation/Notification* <https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn> [as of March 21, 2019].) The 1970 declaration stated: "With reference to the provisions of paragraphs (b) and (c) of Article 10 of the Convention, documents sent for service through official channels will be accepted in Hong Kong only by the central or additional authority and only from judicial, consular or diplomatic officers of other Contracting States." (*Ibid.*)

In 1997, the United Kingdom relinquished control of Hong Kong to the People's Republic of China (China). (*Ibid.*) China declared the Convention would continue to apply to Hong Kong. At that time, China made a declaration almost identical to the United Kingdom's 1970 declaration. The 1997 declaration reads: "With reference to the provisions of sub-paragraphs b and c of Article 10 of the Convention, documents for service through official channels will be accepted in the Hong Kong Special Administrative Region only by the Central Authority or other authority designated, and only from judicial, consular or diplomatic officers of other Contracting States." (*Ibid*; see generally *Willis v. Magic Power Co. Ltd.* (E.D.Pa., Jan. 7, 2011, Civ. A. No. 10–4275) 2011 WL 66017 [describing Convention's applicability to Hong Kong after transfer of Hong Kong sovereignty from United Kingdom to China].)

To understand the meaning of Article 10 and Hong Kong's declaration, we apply well-settled principles for interpreting treaties. "[W]e 'begin "with the text of the treaty and the context in which the written words are used." ' " (*Volkswagenwerk*, *supra*, 486 U.S. at p. 699.) " ' "Treaties are construed more liberally than private agreements, and

5

to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." ' " (*Id.* at p. 700.) We also give " 'great weight' " to the Executive Branch's interpretation of a treaty. (*Water Splash*, *supra*, 137 S.Ct. at p. 1512.)

Applying these principles, we conclude that plaintiffs were permitted to use an agent to serve Whyenlee personally in Hong Kong without first making a request to Hong Kong's Central Authority.

We begin with the language of Hong Kong's declaration. Hong Kong's declaration is nearly identical to the United Kingdom's own declaration, which states: "With reference to Article 10(b) and (c) of the Convention, documents for service through official channels will be accepted in the United Kingdom only by the Central or additional authorities and only from judicial, consular or diplomatic officers of other Contracting States[.]" (Hague Conference, *United Kingdom – Central Authority & practical information* <https://www.hcch.net/en/states/authorities/details3/?aid=278> [as of March 21, 2019]; see also *Balcom*, *supra*, 46 Cal.App.4th at p. 1764.) Various courts, federal and state—including a California Court of Appeal panel—have explained that the United Kingdom's declaration "merely identifies the individuals to be used if a person wishes to serve documents through *official* channels." (*Balcom*, *supra*, 46 Cal.App.4th at p. 1765; accord *Koehler v. Dodwell* (4th Cir. 1998) 152 F.3d 304, 307 ["The declaration by its own terms applies only to 'documents sent for service through official channels' "].)[3] Because the United Kingdom's Article 10 declaration is limited to "official channels," courts have concluded the declaration does not preclude direct service by a

---

[3] (See also *In re American Intern. Group, Inc. Securities Litigation* (S.D.N.Y. 2007) 240 F.R.D. 608, 609 [United Kingdom's declaration is a "narrow exception" that "applies only to documents sent through 'official channels' "]; *Tax Lease Underwriters, Inc. v. Blackwall Green, Ltd.* (E.D. Mo. 1985) 106 F.R.D. 595, 596 ["The 'service through official channels' declaration does not preclude direct service through an English Solicitor."].) The term "official channels" has been read as referring to requests from the judicial, consular, and diplomatic officers referenced in the declaration. (See *ibid.* ["The 'service through official channels' declaration was intended to apply to documents from an embassy or consular official."].)

6

private party.  (*Balcom*, *supra*, 46 Cal.App.4th at p. 1765; *Koehler v. Dodwell*, *supra*, 152 F.3d at p. 307; *In re American Intern. Group, Inc. Securities Litigation*, *supra*, 240 F.R.D. at p. 609; *Tax Lease Underwriters, Inc. v. Blackwall Green, Ltd.*, *supra*, 106 F.R.D. at p. 596.)

In line with these courts, we take the view that Hong Kong's declaration should be interpreted in accord with the United Kingdom's declaration.  Like the United Kingdom's declaration, Hong Kong's declaration is limited to documents sent through "official channels" from "judicial, consular or diplomatic officers."  The declaration does not require a private party to make a request to Hong Kong's Central Authority before using an agent to serve another party personally.

Whyenlee argues that cases construing the United Kingdom's declaration are irrelevant to interpreting Hong Kong's declaration, since the United Kingdom no longer exercises control over Hong Kong.  We disagree.  Hong Kong's declaration is almost identical to the United Kingdom's and was first made when the United Kingdom controlled Hong Kong.  The declaration remained essentially identical after China assumed control of Hong Kong.  This suggests to us that, contrary to Whyenlee's argument, China intended for the declaration to have the same effect as the United Kingdom's declaration.

Whyenlee's proffered interpretation cannot be squared with comments made by Hong Kong's government explaining its official position on the issue.[4]  Hong Kong (along with other parties to the Convention) has provided "practical information" comments to the Hague Conference on Private International Law (Hague Conference).  In commenting on Article 10(b) under the heading "Judicial officers, officials or other competent persons," Hong Kong provided the following guidance:  "The practice of our court is that whenever such requests are received, they will be forwarded to the competent authority for Hong Kong (Chief Secretary for Administration) for processing.

---

[4] Specifically, the information was provided by the Chief Secretary for Administration of the Hong Kong Special Administrative Region Government.

Direct service through Government officials is not available in Hong Kong. However, a private agent (usually a firm of solicitors) may be appointed directly to effect service. *Such service can be effected directly without going through the Government or the judiciary*." (Hague Conference, *China (Hong Kong) -- Other Authority (Art. 18) & practical information*, <https://www.hcch.net/en/states/authorities/details3/?aid=393> [as of March 21, 2019], italics added.)

Comments made by the State Department of the United States, to which we give " 'great weight' " (*Water Splash*, *supra*, 137 S.Ct. at p. 1512), lend further support to our conclusion that direct service is proper in Hong Kong without a preceding request to Hong Kong's Central Authority. In particular, the State Department's website contains "Judicial Assistance Country Information" for several countries, including Hong Kong. There, the State Department offers instructions for how to submit requests for service to Hong Kong's Central Authority. Then, after offering these instructions, the State Department explains that "Hong Kong did not make any reservations with respect to service by international registered mail *or service by agent*." Hong Kong only "advises" that service by the Convention "is the preferred method." (U.S. Department of State – Bureau of Consular Affairs, *Hong Kong Special Administrative Region: Service of Process* <https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html> [as of March 21, 2019], italics added.)

Two federal courts have reached the same conclusion we do regarding the use of an agent to effect personal service in Hong Kong. The court in *McIntire v. China MediaExpress Holdings, Inc.* (S.D.N.Y. 2013) 927 F.Supp.2d 105, rejected a defendant's argument that service through an agent was improper in Hong Kong under the Hague Convention. Citing the language of Article 10(b) and the State Department's related comments, the court concluded that "Hong Kong has not objected to service by agent." (*Id.* at p. 133.) A bankruptcy court reached a similar conclusion in *In re Cyrus II Partnership* (Bankr. S.D.Tex. 2008) 392 B.R. 248, explaining that "Hong Kong has not objected to Article 10(b) of the Hague Convention allowing for service of judicial

8

documents directly through 'other competent persons,' which Hong Kong has stated includes 'a private agent.' " (*Id.* at p. 258.)

Whyenlee asks us to depart from the considerable body of precedent favoring plaintiffs' position, citing *Denlinger v. Chinadotcom Corp.* (2003) 110 Cal.App.4th 1396, and *Willis v. Magic Power Co., Ltd.*, *supra*, 2011 WL 66017, but neither of those cases addresses personal service under Article 10(b) or 10(c). Both read Article 10(a) to permit service by mail,[5] an unsurprising interpretation that, if anything cuts in favor of plaintiffs here, since personal service is more likely to provide a party with actual notice of a lawsuit than service by mail. (See *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 313 ["Personal service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding."]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2018) ¶ 4:185 ["Personal service gives defendant less opportunity to claim lack of notice of the action."].)

*HCT Packaging Inc. v. TM International Trading Limited* (C.D.Cal., March 10, 2014, No. CV 13–08443 RGK (SHx)) 2014 WL 12696776) (*HCT Packaging*), the sole case Whyenlee cites that actually addresses the issue of personal service, is an outlier. The *HCT Packaging* court explains that Article 10(b) of the Convention allows for personal service unless the destination state objects. (*Id.* at *6.) Then, citing *Denlinger*, the court stated that "Hong Kong objected to article 10(b)," and therefore, "personal service is insufficient." (*Ibid.*) We do not find *HCT Packaging* to be persuasive and decline to follow it. As we have explained, Hong Kong's declaration does not make personal service "insufficient." Instead, the declaration is limited to documents sent through "official channels" from "judicial, consular or diplomatic officers." What the *HCT Packaging* court overlooks is that *Denlinger* never analyzed Hong Kong's declaration to Article 10, except to say it does not preclude service by mail.

---

[5] The United States Supreme Court later reached the same holding in *Water Splash*, *supra*, 137 S.Ct. at page 1513.

9

Aside from case law, both parties have supported their arguments by citing Hong Kong's responses to a series of "questionnaires" provided by the Hague Conference to member states of the Convention. The parties did not present these materials to the trial court in the motion to quash proceeding. While we generally do not consider issues that were not raised in the trial court (*Simplon Ballpark, LLC v. Scull* (2015) 235 Cal.App.4th 660, 669–670), we will consider the parties' arguments to ensure the completeness of our analysis of Article 10's applicability. (Accord *State Farm Fire & Casualty Co. v. Superior Court* (1989) 210 Cal.App.3d 604, 610 [newly raised issue "based on construction of the statutory language and application of the precedent" considered in mandamus proceeding].)[6]

Plaintiffs rely on comments made by Hong Kong's government responding to a Hague Conference questionnaire in 2003. In the 2003 questionnaire, member states were "invited to specify whether the transmission method described under Article 10(b) (service through judicial officers, officials or other competent persons) is used frequently." Hong Kong provided the following response: "No statistics have been kept on the number of requests received directly from judicial officers of a foreign court. The practice of our court is that whenever such requests are received, they will be forwarded to the competent authority for Hong Kong (Chief Secretary for Administration) for processing. Direct service through Government officials are not available in Hong Kong. However, a private agent (usually a firm of solicitors) may be appointed directly to effect service. *Such service can be effected directly without going through the Government or the judiciary.* Therefore we do not have the statistics on such service." (Italics added.) This statement, which is similar to the "practical information" statement provided by Hong Kong to the Hague Conference, provides further indication that private parties may

_____

[6] We grant both parties' requests for judicial notice of Hong Kong's responses to the questionnaires. (Evid. Code, § 452, 459.) Whyenlee's "evidentiary objections in support of reply" are overruled.

10

use an agent to effect personal service in Hong Kong without first making a request to the Central Authority.

Whyenlee asks us to disregard Hong Kong's statement in the 2003 questionnaire, arguing that Hong Kong's more recent responses to a 2008 Hague Conference questionnaire supersede the 2003 comments and demonstrate that Hong Kong does not permit direct personal service. It cites to a question asking member states that have not objected to Article 10(b) of the Convention to identify which category of persons are considered "judicial officers, officials or other competent persons" in the member state. The questionnaire then lets member states choose from a list of possible answers, such as "attorneys or solicitors," "process servers," and "notaries." Hong Kong's response selected none of these categories and instead marked a box titled "Other." Hong Kong then explained: "The Hong Kong Special Administrative Region only accepts those entities designated as 'forwarding authorities' by other Contracting States." In a follow up question about how "this channel of transmission operate[s] in practice," Hong Kong responded that it "operates in a similar manner as the main channel of transmission under Articles 3 and 5 of the Convention," an apparent reference to requests made to a Central Authority contemplated by Articles 3 and 5.

Whyenlee contends that because Hong Kong did not select attorneys, solicitors, process servers, and the like, such persons cannot be "competent persons" who can serve process in Hong Kong under Article 10(b). It argues further that Hong Kong's reference to Articles 3 and 5 means that all requests for service must go through the Central Authority. This reading of Hong Kong's responses to the 2008 questionnaire contradicts the other statements made by Hong Kong and the United States discussed above, which indicate that a party may effect direct service without involving the Central Authority. The better way to interpret Hong Kong's statements in the 2008 questionnaire, in our view, is to read them in conjunction with Hong Kong's declaration to Article 10 which, as we have explained, is limited to documents sent from "judicial, consular, or other diplomatic officers of other Contracting States" through "official channels." When read in conjunction with the declaration, Hong Kong's reference in the 2008 questionnaire to

11

"forwarding authorities" denotes the "judicial, consular, or other diplomatic officers" described in Hong Kong's declaration, and does not encompass private parties. In addition, Hong Kong's reference in the 2008 questionnaire to requests made to the Central Authority under Articles 3 and 5 applies to requests from judicial, consular, or other diplomatic officers, not to private parties.

Accordingly, we hold that plaintiffs were permitted to use an agent to serve Whyenlee personally in Hong Kong without first making a request to Hong Kong's Central Authority. As a result, the trial court correctly denied its motion to quash.[7]

### III. DISPOSITION

The petition for a writ of mandate is denied.

---

[7] Because we conclude plaintiffs properly served Whyenlee via personal service through an agent, we need not address the trial court's alternative grounds for denying Whyenlee's motion, including that plaintiffs "demonstrated their 'substantial compliance' with the Hague Convention requirements for service of process," and that Whyenlee wrongfully refused to accept service of process.

_____
STREETER, J.

WE CONCUR:


_____
POLLAK, P.J.


_____
TUCHER, J.

A155008/*Whyenlee Industries, Ltd. v. Superior Court*

A155008/*Whyenlee Industries, Ltd. v. Superior Court*

Trial Court:                      San Mateo County Superior Court

Trial Judge:                     Hon. Marie S. Weiner

Counsel:

      Law Offices of Danning Jiang, Danning Jiang, and Fei Liu for Petitioner.

      No appearance for Respondent.

      Vinson & Elkins, Mortimer H. Hartwell and Tyler Layton; Greenberg Traurig and Howard Holderness for Real Parties in Interest.